Submitted December 12, 2008, affirmed July 15, 2009

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# SUMER MARIE KOUNTZ,
*Defendant-Appellant.*

Multnomah County Circuit Court
060935218; A134965

212 P3d 1281

Garrett A. Richardson filed the brief for appellant. With him on the brief was Multnomah Defenders, Inc.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for possession of methamphetamine, ORS 475.894, assigning error to the trial court's denial of her motion to suppress evidence that a police officer found in her purse in the course of an inventory of the contents of the car in which she was a passenger. We conclude that the trial court did not err and affirm.

Defendant was a passenger in a car lawfully stopped for traffic infractions by Portland Police Officer McDaniel. McDaniel took the driver of the car into custody after learning that his Oregon driving privileges had been suspended and that there were two outstanding warrants for his arrest. McDaniel impounded the vehicle and asked defendant to step out so that he could inventory its contents pursuant to Portland's inventory policy. McDaniel asked defendant if she wanted to go to a nearby restroom to fix her clothing, which had become disarranged. Defendant agreed, and, while she was gone, McDaniel saw a purse on the floor of the passenger side near where defendant had been sitting, but within the driver's "immediate reach." He decided to inventory the purse as an item potentially containing valuables. He unzipped the purse and found a small glass jar containing two bags of methamphetamine.

When defendant returned to the car, the purse was on the roof of the car, where McDaniel had placed it. McDaniel asked defendant if the purse was hers and if he could search it. After defendant gave him permission to search the purse, McDaniel told her that he had already looked inside it, and he asked her if that was all right with her. After hesitating, defendant answered, "Yeah, I guess." McDaniel took defendant into custody and removed the methamphetamine from the purse. Based on that evidence, defendant was charged with possession of methamphetamine.

Defendant moved to suppress the contents of the purse, asserting that Portland's inventory policy does not allow the opening of the purse of a person who is not under arrest. The state maintained that the purse was subject to

inventory because it was in the possession of the driver at the time of his arrest by virtue of his possession of the car and the close proximity of the purse to the driver. The trial court concluded that the purse was in the driver's possession at the time of arrest and denied defendant's motion to suppress the evidence obtained in the inventory of the purse. After a bench trial, defendant was convicted of unlawful possession of methamphetamine.

On appeal, defendant contends that the opening of the purse was an unlawful search that violated Article I, section 9, of the Oregon Constitution. The state contends that McDaniel examined the contents of defendant's purse pursuant to a valid administrative inventory policy.

■■ Article I, section 9, prohibits unreasonable searches. A warrantless search is *per se* unreasonable unless it falls within a recognized exception to the warrant requirement. *State v. Snow*, 337 Or 219, 223, 94 P3d 872 (2004). The inventory of a lawfully impounded vehicle, conducted pursuant to a properly authorized administrative program that limits police discretion, is one such exception. *State v. Atkinson*, 298 Or 1, 7, 688 P2d 832 (1984). In this case, the state contends that the search of defendant's purse was justified by Portland's inventory policy.

■ The Portland City Code (PCC) includes two inventory provisions. PCC 14C.10.030 relates to the inventory of the contents of an impounded vehicle and prohibits the opening of closed containers found in the vehicle. PCC 14C.10.040 relates to the inventory of the personal property of a person who has been taken into custody and allows for the opening of closed containers in the arrested person's possession, if those containers are designed to carry valuables. PCC 14C.10.040(C)(3) provides, in part:

"A closed container in the possession of [a person taken into custody] will have its contents inventoried only when:

"* * * * *

"c. The closed container is designed for carrying money and/or small valuables on or about the person including, but not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs."

Thus, under PCC 14C.10.040(C)(3)(c), a purse or other small container designed for carrying valuables may be opened for the purpose of inventorying its contents if it is in the "possession" of the arrested person.

At issue in this case is whether defendant's purse was in the "possession" of the driver when the police inventoried the contents of the driver's car pursuant to PCC 14C.10.040(C)(3)(c). As the Supreme Court explained in *State v. Connally*, 339 Or 583, 591, 125 P3d 1254 (2005), whether an object is in an individual's "possession" under an inventory policy presents two distinct questions.

First, there is the question as to the meaning of the term "possession" itself; that presents a question of law concerning the interpretation of the inventory policy or ordinance. *Id.* at 588. In *Connally*, the court actually addressed the meaning of just that term as it is used in PCC 14C.10.040. Citing *Webster's Third New Int'l Dictionary* 1770 (unabridged ed 2002), the court concluded that the term means "the act or condition of having in or taking into one's control or holding at one's disposal." *Connally*, 339 Or at 591. The court then explained:

> "That definition is broad enough to include personal property within the suspect's immediate reach as well as property under the suspect's dominion and control, a conclusion that other parts of the ordinance support. Section 14C.10.040 refers both to 'possession' and 'immediate possession.' *See* PCC 14C.10.040(C) (possession); PCC 14C.10.040(C)(3)(a) (immediate possession). We understand the phrase 'immediate possession' to refer to personal property that is on the suspect's person or within his or her immediate reach and the term 'possession' to refer, in addition, to personal property under the suspect's dominion and control. * * * Put more succinctly, 'possession' includes both actual and constructive possession."

*Id.* (citation omitted).

Second, there is the question whether an individual actually or constructively possessed an object at the time of the inventory. That presents a question of fact. *Id.* at 593.

In this case, there is no dispute over the meaning of the term "possession" as it is used in PCC

14C.10.040(C)(3)(c); on that issue, *Connally* controls. The dispute is whether there is evidence in the record to support the trial court's finding of fact that the driver of the vehicle that was about to be impounded was in actual or constructive possession of defendant's purse at the time of the inventory. Defendant contends that there is no evidence in this case that the purse belonged to the driver, that the driver touched the purse, or that he took any other action that indicated he was exercising dominion or control over it. The state responds that the evidence supports the trial court's finding in that it shows that the purse was discovered in the driver's car, within his immediate reach, and after defendant had left it behind in the car when she went to the restroom. According to the state, that makes this case indistinguishable from *Connally*.

We agree with the state. In *Connally*, the police learned during the course of a stop that the defendant, the driver of a car, had an outstanding felony warrant. The police handcuffed the defendant, placed him under arrest, and—pursuant to Portland's inventory policy—proceeded to inventory the contents of the car. In the course of the inventory, the police found a nylon bag for holding skis in the back seat where a passenger had been sitting. The police opened the bag and found a fanny pack that, in turn, contained baggies of methamphetamine. The defendant was charged with possession of a controlled substance. 339 Or at 585-86.

The defendant moved to suppress the evidence of the methamphetamine, arguing that, among other things, there was insufficient evidence that he actually or constructively possessed the drugs. The trial court denied the motion, and the Supreme Court affirmed. The court explained that, the "defendant drove the car and was standing next to it when the officers took him into custody. The trial court reasonably could infer from that evidence that [the] defendant exercised dominion and control over the fanny pack (and thus possessed it) when [the officer] placed him under arrest." *Id.* at 594. Interestingly, in a footnote, the court noted that the defendant had not argued that there was insufficient evidence to show that the ski bag belonged to him rather than one of the passengers. The court then commented that,

"[g]iven defendant's apparent control over the car and its contents, such an argument would be difficult to mount." *Id.* at 594 n 8.

In this case, the facts are materially indistinguishable from those in *Connally*. As in *Connally*, in this case, the driver had just been driving the car. And as in *Connally*, in this case, at the time of arrest, the driver was physically close to the evidence that was seized. In fact, if anything, the facts of this case offer even more evidence of dominion or control. While the defendant in *Connally* was standing outside of the car at the time of arrest, in this case, the driver was still in the car, where the purse was within his "immediate reach." If the facts in *Connally* were sufficient to support a finding that the driver actually or constructively possessed objects in the car, the record in this case certainly does.

Defendant insists that such a conclusion cannot be reconciled with cases holding that an individual's "mere proximity" to property, by itself, cannot support a finding that the individual exercises dominion or control over it. It is true that, as we noted in *State v. Sosa-Vasquez*, 158 Or App 445, 448, 974 P2d 701 (1999), "mere presence in the proximity of controlled substances is not sufficient to establish constructive possession" of the drugs. Those cases, however, did not involve a motor vehicle and a driver's actual or constructive possession of property readily accessible to the driver of such a vehicle. *See, e.g., State v. Miller*, 238 Or 411, 414, 395 P2d 159 (1964) (presence of weapons in glove compartment of car the defendant was driving held to be "particularly strong" circumstantial evidence of driver's possession); *State v. Marsh*, 78 Or App 290, 294, 716 P2d 261, *rev den*, 301 Or 320 (1986) (that the defendant driver knew that a passenger had a gun in her purse and that the gun was "available" held sufficient to find that the defendant possessed it). In any event, even assuming that *Connally* stands in some tension with some other cases, it is, as we have noted, virtually indistinguishable from the facts of this one.

It may also be argued (although defendant in this case does not do so) that *Connally* actually is not controlling, because this case involves the issue that the court noted in a footnote that it was not addressing, namely, whether the

facts were sufficient to establish that the driver, *as opposed to the passengers*, possessed the drugs found in the car. In a sense, it could be argued, this case presents the issue that the defendant in *Connally* did not. The problem with such an argument, however, is the Supreme Court's comment that, "[g]iven defendant's apparent control over the car and its contents, such an argument would be difficult to mount." 339 Or at 594 n 8. The court's remark may be *dictum*, but, given the court's analysis of the adequacy of the evidence of the defendant's apparent control over the property at issue in *Connally*, we can discern no basis for arriving at a different conclusion in this case. Particularly given the fact that the driver in this case was even closer to the property at issue than was the defendant in *Connally*, and given further that defendant in this case walked away from the car and left the property behind, we must conclude that the evidence is sufficient to support the trial court's finding that the driver possessed the purse. As a result, the police lawfully searched the contents of the purse in accordance with the city's inventory policy.

Affirmed.