Argued and submitted November 9, 2004, decision of Court of Appeals and
judgment of circuit court affirmed December 15, 2005

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## RICHARD MICHAEL CONNALLY,
*Petitioner on Review.*

(CC 000634971; CA A116517; SC S50999)

125 P3d 1254

Jennelle Meeks Barton, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Harry Auerbach, Chief Deputy City Attorney, Portland, filed the brief for *amicus curiae* City of Portland.

KISTLER, J.

**KISTLER, J.**

The issue in this criminal case is whether the Portland City Code authorized police officers to inventory the contents of a closed "fanny pack" that defendant left in an impounded car. We hold that that it did and accordingly affirm the Court of Appeals decision and the trial court's judgment.

Portland Police Officer Larson was sitting in his car outside Huskey's house. Larson knew that Huskey had sold methamphetamine and that there was an outstanding warrant for Huskey's arrest. Larson saw defendant and another person drive up to Huskey's house, park, and go inside. Later, defendant, Huskey, and a third person came out of the house and got into the car. Defendant drove. A short distance from the house, Larson pulled up behind defendant's car and turned on his overhead lights. Defendant did not stop but instead drove back to Huskey's house and parked in the driveway.

Larson approached the car and placed Huskey under arrest. At that point, defendant had stepped out of the car and was standing beside it. Larson mentioned to defendant that he had failed to stop when Larson had turned on his overhead lights. Larson asked defendant for his driver license, and defendant told him that his license had been suspended. Larson confirmed defendant's statement and, in doing so, learned that defendant had an outstanding felony warrant. At that point, he handcuffed defendant and placed him under arrest.

Larson patted defendant down, found approximately $1,200 in cash on him, and put him in the back of the patrol car.[1] Larson also impounded the car because defendant's driver license had been suspended. By that time, another officer had arrived and Larson asked him to inventory the car's contents. That officer found eight bottles of pseudoephedrine in an open paper bag, two cell phones, and

---

[1] Larson noticed that defendant was sweating, unkempt, talking fast, and acting aggressive. Based on his experience, Larson concluded that defendant probably was under the influence of methamphetamine.

a police scanner. He then felt a hard object inside a ski locker (a nylon bag for holding skis) placed between the back seats. Inside the ski locker, he found a fanny pack. He opened the fanny pack and discovered small baggies of what appeared to be methamphetamine, other unused baggies, syringes, and papers with defendant's name on them.

Based on the contents of the fanny pack, the state charged defendant with possessing methamphetamine. Before trial, defendant filed a motion to suppress. He did not challenge the lawfulness of the stop, the arrest, the discovery of the pseudoephedrine bottles, or the inventory search in general. Rather, defendant challenged only the search of the fanny pack.

At a pretrial hearing on defendant's motion, the state argued that the officers properly opened the fanny pack either under the automobile exception to the warrant requirement or as part of an authorized inventory. The trial court ruled that the automobile exception did not apply, apparently because the police had impounded the car before opening the fanny pack. The court determined, however, that the officers properly opened the fanny pack pursuant to the City of Portland's inventory policy. That policy, the court explained, authorizes the police to open closed containers that are designed to hold valuables, and the fanny pack fell into that category. The court denied defendant's motion to suppress and, after a bench trial, convicted defendant of possessing methamphetamine.

The Court of Appeals affirmed without opinion. *State v. Connally*, 189 Or App 551, 77 P3d 337 (2003). Defendant petitioned for review, arguing that the Court of Appeals had issued conflicting opinions on this subject. Defendant contended that, in one case, the court had held that the City of Portland's inventory policy permitted the officers to open a closed container found in an impounded car but that, in another case, the court had reached a different result under Washington County's virtually identical inventory policy. *Compare State v. Rutledge*, 162 Or App 301, 986 P2d 99 (1999) (holding that officers could open small leather container found next to driver's seat), *with State v. Ray*, 179 Or App 397, 40 P3d 528 (2002) (holding that officer could not

open gym bag found in vehicle). We allowed defendant's petition for review to resolve that apparent conflict.

■ Article I, section 9, of the Oregon Constitution prohibits unreasonable searches.[2] A warrantless search is *per se* unreasonable unless it falls within "one of the few specifically established and carefully delineated exceptions to the warrant requirement." *State v. Snow*, 337 Or 219, 223, 94 P3d 872 (2004). In this case, the officers did not have a warrant to open the fanny pack. However, the state argues on review, as it did below, that the officers properly searched the fanny pack either as part of an authorized inventory of the car's contents or pursuant to the automobile exception. Because we hold that the City of Portland's inventory policy authorized the officers to open the fanny pack, we need not decide whether the search also came within the automobile exception.

■ State and local governments may authorize officers to inventory the contents of an impounded car to protect the owner's property, to reduce the likelihood of false claims against the police, and to protect the safety of the officers. *State v. Atkinson*, 298 Or 1, 7, 688 P2d 832 (1984). The purpose of the inventory is not to discover evidence of a crime. Rather, an inventory serves civil purposes and is one type of administrative search. *Nelson v. Lane County*, 304 Or 97, 104, 743 P2d 692 (1987) (plurality opinion). Officers may inventory the contents of a vehicle consistently with Article I, section 9, if (1) they lawfully have impounded the vehicle and (2) they conduct the inventory pursuant to a properly authorized administrative program that limits their discretion. *State v. Boone*, 327 Or 307, 312-14, 959 P2d 76 (1998); *Atkinson*, 298 Or at 8, 10. The police may inventory the contents of containers when doing so is necessary to serve the inventory's purposes. *See Atkinson*, 298 Or at 10 (stating proposition); *cf. State v. Keller*, 265 Or 622, 629, 510 P2d 568

---

[2] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

(1973) (opening closed fishing tackle box as part of an inventory search was unreasonable in violation of Article I, section 9).

◼     In this case, defendant argues that the officers opened the fanny pack in violation of the terms of the Portland City Code (PCC). Initially, he contends that the PCC does not authorize officers to open any closed container that they find in an impounded car. Alternatively, he argues that, even if the PCC authorizes officers to open some closed containers, it only permits them to open closed containers in a suspect's possession. He contends that, because he did not possess the fanny pack after the officers impounded the car and its contents, the officers exceeded the scope of their authority under the PCC.[3]

In determining what the PCC authorizes, we begin with the text and context of that ordinance. *See Lincoln Loan Co. v. City of Portland*, 317 Or 192, 199, 855 P2d 151 (1993) (applying statutory construction methodology to municipal ordinances). Chapter 14C.10 of the PCC[4] authorizes officers to inventory both impounded vehicles and the personal property of persons taken into police custody. Section 14C.10.030 sets out the policy for inventorying impounded vehicles. With some exceptions, it authorizes officers to inventory "the contents of open containers" found throughout the vehicle. PCC 14C.10.030(C). It also provides that, "[u]nless otherwise provided in this Chapter, closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes." PCC 14C.10.030(C)(3).

Chapter 14C.10 contains one other substantive section, PCC 14C.10.040.[5] That section provides, in part:

---

[3] Defendant does not argue that, if the PCC authorized the officers to inventory the contents of the fanny pack, the scope of the inventory was unreasonable in violation of Article I, section 9. *See State v. Perry*, 298 Or 21, 688 P2d 827 (1984) (in noncriminal context, Article I, section 9, prohibits opening closed suitcase to inventory its contents); *Keller*, 265 Or at 629 (in criminal context, Article I, section 9, prohibits opening closed tackle box to inventory its contents).

[4] At the time that police searched defendant's car, Chapter 14C.10 of the PCC was numbered as Chapter 14.10. Because the chapter has not been changed substantially since the search, we cite to the current version of the PCC.

[5] Chapter 14C.10 contains four sections. In addition to the two sections discussed in the text, section 14C.10.010 states the purpose of the chapter, and section 14C.10.020 defines some of the terms used in the chapter.

"A.   A police officer will inventory the personal property in the possession of a person taken into police custody and such inventory will be conducted whenever:

"1.   Such person will be either placed in a secure police holding room or transported in the secure portion of a police vehicle;

"* * * * *

"C.   Inventories of the personal property in the possession of such persons will be conducted according to the following procedures:

"* * * * *

"2.   To complete the inventory of the personal property in the possession of such person, the police officer will remove all items of personal property from the clothing worn by such person. In addition, the officer will also remove all items of personal property from all open containers in the possession of such person.

"3.   A closed container in the possession of such person will have its contents inventoried only when:

"a.   The closed container is to be placed in the immediate possession of such person at the time that person is placed in the secure portion of a custodial facility, police vehicle or secure police holding room;

"b.   Such person requests that the closed container be with them in the secure portion of a police vehicle or a secure police holding room; or

"c.   The closed container is designed for carrying money and/or small valuables on or about the person including, but not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs."

Defendant argues initially that section 14C.10.030 does not authorize officers to inventory the contents of any closed container that they find in an impounded vehicle. As defendant notes, paragraph 14C.10.030(C)(3) of the PCC generally prohibits officers from opening closed containers that they find in impounded vehicles, but that paragraph also adds the following qualification: "[u]nless otherwise provided in this Chapter." Principles of statutory construction require that we give the quoted phrase meaning, if possible,

and we look to the other sections in Chapter 14C.10 to determine the terms on which officers may open closed containers left in impounded vehicles. *See* ORS 174.010 (court should attempt to give effect to all provisions or particulars of statute when construing it); *State v. Snyder*, 337 Or 410, 425, 97 P3d 1181 (2004) (same).

As noted, section 14C.10.040 is the only other substantive section in Chapter 14C.10. That section authorizes officers to inventory "personal property in the possession of a person taken into police custody," PCC 14C.10.040(A), and one paragraph in that section authorizes officers to open closed containers in certain circumstances, PCC 14C.10.040(C)(3). We conclude that the phrase "[u]nless otherwise provided in this Chapter" in paragraph 14C.10.030(C)(3) refers to paragraph 14C.10.040(C)(3). The Portland City Council adopted sections 14C.10.030 and 14C.10.040 at the same time, and any other interpretation would render the phrase in paragraph 14C.10.030(C)(3), "unless otherwise provided in this Chapter," meaningless. *See, e.g., Snyder*, 337 Or at 425 (directing courts to avoid that result if possible).

■   Having concluded that paragraphs 14C.10.030(C)(3) and 14C.10.040(C)(3) authorize officers to open some closed containers that they find while inventorying the contents of an impounded vehicle, we turn to the second issue that defendant raises—whether subparagraph 14C.10.040(C)(3)(c) authorized the officers to open the fanny pack that they found in this case. That subparagraph authorizes officers to inventory the contents of a closed container "in the possession" of a person taken into police custody when the container "is designed for carrying money and/or small valuables on or about the person including, but not limited to * * * closed fanny packs." Defendant does not dispute that the fanny pack was a container "designed for carrying money and/or small valuables." He argues, however, that the fanny pack was not in his possession when the officers inventoried its contents.

In arguing whether subparagraph 14C.10.040(C)(3)(c) authorized the officers to open the fanny pack, the parties spend much of their time debating the meaning of the word

"possession." In our view, the meaning of that word is neither difficult nor, as it turns out, dispositive. "Possession" ordinarily means "the act or condition of having in or taking into one's control or holding at one's disposal." *Webster's Third New Int'l Dictionary* 1770 (unabridged ed 2002). That definition is broad enough to include personal property within the suspect's immediate reach as well as property under the suspect's dominion and control, a conclusion that other parts of the ordinance support. Section 14C.10.040 refers both to "possession" and "immediate possession." *See* PCC 14C.10.040(C) (possession); PCC 14C.10.040(C)(3)(a) (immediate possession). We understand the phrase "immediate possession" to refer to personal property that is on the suspect's person or within his or her immediate reach and the term "possession" to refer, in addition, to personal property under the suspect's dominion and control. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (use of different terms usually connotes different meanings). Put more succinctly, "possession" includes both actual and constructive possession.

That definition does not resolve the parties' dispute, however, as an examination of their arguments demonstrates. Defendant does not dispute that he possessed the fanny pack *when* the officers placed him under arrest. At that point, defendant was standing next to the car, and the fanny pack was inside the car under his dominion and control. Rather, defendant argues that he did not possess the fanny pack *after* the officers had placed him in the back of the police car and had impounded his car. At that point, he argues, "[t]he car and its contents [we]re in the physical possession and within the dominion or control of the police bureau"—an argument that has some force.

It follows, we think, that the issue that divides the parties is not the meaning of the term "possession" but the temporal question of when, under the PCC, possession matters. Does the PCC authorize officers to inventory all the property that was in a suspect's possession when they arrested him, or does it authorize them to inventory only the property that remains in the suspect's possession after they impound his or her car? In answering that question, we turn again to the text and context of the PCC.

Subsection 14C.10.040(A)(1) directs the police to "inventory the personal property in the possession of a person taken into police custody * * * whenever * * * [s]uch person will be either placed in a secure holding room or transported in the secure portion of a police vehicle." Temporally, the phrase in the independent clause "property in the possession of a person taken into police custody" refers to property that the person possesses when the police take that person into custody. The dependent clause—"whenever [s]uch person *will be* either *placed* in a secure holding room or transported in the secure portion of a police vehicle"—reinforces that conclusion. (Emphasis added.) The use of the future tense makes clear that paragraph 14C.10.040(A)(1) is directed at property that the suspect possessed *when* the police took the person into custody and *before* they put him or her into the secure portion of a police vehicle.

Paragraph 14C.10.040(C)(3)—the paragraph on which defendant's argument turns—refers to paragraph 14C.10.040(A)(1) and incorporates the same temporal determination. It provides that "[a] closed container in the possession of such person [a person taken into police custody] will have its contents inventoried only when" one of three conditions occurs. PCC 14C.10.040(C)(3). Reading paragraph 14C.10.040(C)(3) and subsection 14C.10.040(A) together, we conclude that the phrase "in the possession of such person" in paragraph 14C.10.040(C)(3) refers to property that the suspect possessed when the police took him or her into custody. Not only does that conclusion follow from the wording of paragraph 14C.10.040(C)(3), but any other conclusion would render subparagraph 14C.10.040(C)(3)(b) internally inconsistent.

That subparagraph states that a "closed container in the possession of such person [a person taken into police custody] will have its contents inventoried only when * * * [s]uch person requests that the closed container be with them in the secure portion of a police vehicle[.]" At first blush, that sentence appears internally inconsistent. The independent clause refers to a container in the suspect's possession. The dependent clause refers to the same container in the possession of the police, which they may or may not return to the suspect.

However, as explained above, the independent clause in subparagraph 14C.10.040(C)(3)(b) refers to containers that were in the suspect's possession when the police took him or her into custody and before they placed the suspect in the secure part of a police vehicle. The dependent clause in that subparagraph refers to possession at a later period of time—after the police have taken the suspect into custody, removed the suspect's personal property, *see* PCC 14C.10.040(B)(2) (so authorizing), and placed him or her in the secure portion of a police vehicle.[6] Recognizing that temporal distinction resolves the apparent contradiction between the independent and dependent clauses and gives effect to both.[7] *See* ORS 174.010 (directing courts to give effect to all provisions); *Snyder*, 337 Or at 425 (same).

We hold that the PCC expressly authorizes officers to inventory certain closed containers found in an impounded car if the suspect possessed those containers when the police arrested or took him or her into police custody. *See* PCC 14C.10.020(D)(1) (defining "police custody" as, among other things, "[t]he imposition of restraint as a result of an 'arrest' "). That interpretation gives effect to both the words of the ordinance and the stated goal of avoiding spurious claims. *See* PCC 14C.10.040(B)(1) (identifying that goal as one purpose of city's inventory policy). It ensures that the police can account for all the personal property that a suspect possessed when the police took him or her into their custody.

■ The specific question in this case—whether defendant possessed the fanny pack when the police arrested him—presents a factual issue for the trier of fact. *See State v.*

---

[6] Although the PCC contemplates that the police usually will conduct the inventory before they place the suspect in a secure holding room or police vehicle, it also recognizes that the police may conduct the inventory after doing so. PCC 14C.10.040(C)(1).

[7] Subparagraph 14C.10.040(C)(3)(a) presents the same interpretative issue. That subparagraph authorizes the police to inventory the contents of a "closed container in the possession of [a person taken into police custody]" when it "is to be placed" in the suspect's possession after he or she is in a secure area. A container cannot simultaneously be both in the suspect's possession and "to be placed" in his or her possession. The answer to that apparent contradiction is the one noted above; the first use of the term "possession" refers to possession when the police took the person into custody and the second use of the term refers to possession after the suspect has been placed in a secure area.

*Oare*, 249 Or 597, 599, 439 P2d 885 (1968) (recognizing that question of constructive possession presents factual issue). Although the trial court did not address that issue explicitly, we are bound by its implicit findings as long as there is evidence in the record to support them. *See State v. Amaya*, 336 Or 616, 628, 89 P3d 1163 (2004) (stating that proposition). Here, defendant drove the car and was standing next to it when the officers took him into custody. The trial court reasonably could infer from that evidence that defendant exercised dominion and control over the fanny pack (and thus possessed it) when Larson placed him under arrest.[8] We also note that defendant does not dispute, at least on review, that a fanny pack "is designed for carrying money and/or small valuables on or about the person" and thus falls within the terms of subparagraph 14C.10.040(C)(3)(c). Because that subparagraph explicitly authorized the officers to open defendant's fanny pack in the course of the inventory, the trial court correctly denied defendant's motion to suppress.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[8] Defendant did not argue below and has not argued in this court that the evidence was insufficient to permit the court to find that he, as opposed to one of his passengers, possessed the fanny pack. Given defendant's apparent control over the car and its contents, such an argument would be difficult to mount. *Cf. Oare*, 249 Or at 599-600 (evidence not sufficient, under circumstances of that case, to establish that visitor exercised constructive possession over contraband found in home).