Argued and submitted December 22, 2009, affirmed April 28, 2010

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## RONNIE SCOTT MEDINGER,
*Defendant-Respondent.*

Jackson County Circuit Court
090617FE, 090618FE;
A142025 (Control), A142026

230 P3d 76

Samuel A. Kubernick, Assistant Attorney General, argued the cause for appellant. With him on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Ryan T. O'Connor, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

WOLLHEIM, P. J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

## WOLLHEIM, P. J.

The state appeals the trial court's order suppressing evidence obtained after a police officer stopped defendant and drove him to the scene of a crime. ORS 137.060(1)(c). The trial court concluded that the officer had arrested defendant without probable cause, and rejected the state's inevitable discovery argument. We affirm.

We take the following facts from the trial court record and the trial court's findings. *See State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) ("A trial court's findings of historical fact are binding on appellate courts if there is constitutionally sufficient evidence in the record to support those findings."). The evidence taken at the hearing on the motion is undisputed. A guest staying at the Cascade Inn Motel woke up after hearing a loud banging noise early in the morning. Without putting on his glasses, the guest looked through the window and saw that someone had apparently knocked over a vending machine. The guest saw a person from the back who was wearing a gray hooded sweatshirt and walking north on Riverside, the street adjacent to the Cascade Inn. The guest did not see the suspect's face and could not provide any additional details to describe the suspect. The guest got dressed, opened the door, and told his friend to call 9-1-1 to report what had happened. The guest remained on the scene, waiting for the police to arrive. He never saw anyone walk south on Riverside.

Officer Barringer heard a report that the suspect was last seen wearing a gray hooded sweatshirt and walking north on Riverside near the Cascade Inn. Four minutes after the 9-1-1 call, at 5:04 a.m., Barringer turned north on Riverside toward the Cascade Inn and saw defendant walking south on Riverside, approximately one-third mile south of the Cascade Inn. Defendant was wearing a gray hooded sweatshirt and was the only person Barringer saw on Riverside. Defendant saw Barringer and continued walking. Barringer turned on his patrol car's overhead lights and ordered defendant to stop, and defendant complied. Because defendant's hands were concealed in his pockets, Barringer grew concerned for his safety. Barringer immediately frisked defendant and found no weapons.

Based on his interaction with defendant, Barringer concluded that defendant was intoxicated. Barringer also was suspicious that defendant was responsible for the incident at the Cascade Inn. Accordingly, Barringer placed defendant in the patrol car and drove him to the Cascade Inn. Barringer testified that, if the guest had not identified defendant as the person he had seen, Barringer would have taken defendant to an alcohol treatment facility.

Back at the Cascade Inn, Barringer presented defendant to the guest for identification. The guest first saw defendant in the back of the patrol car and in handcuffs. The guest stated that, because defendant's build matched the suspect's build, defendant was the person that the guest saw. Officer Arnold, the officer at the Cascade Inn, arrested defendant based on the guest's positive identification, read defendant *Miranda* warnings, and searched defendant's pockets. Arnold discovered paystubs belonging to different people in defendant's pockets. Defendant was charged in two indictments. The first indictment, based on the vending machine incident, alleged two counts of criminal mischief in the first degree, ORS 164.365, and two counts of criminal mischief in the second degree, ORS 164.354. Based on the paystubs found in defendant's pockets, the second indictment alleged burglary in the second degree, ORS 164.215, two counts of identity theft, ORS 165.800, and theft in the third degree, ORS 164.043.

Before trial, defendant moved to suppress evidence of the guest's identification of him, the paystubs that Arnold had discovered in defendant's pockets, and all other evidence discovered after Barringer stopped defendant. Defendant argued that the stop evolved into an arrest that was not supported by probable cause when Barringer handcuffed defendant and put him in the patrol car. Defendant relied on both the Oregon and the United States constitutions in his motion to suppress. In addition, defendant argued that, because this was a warrantless search, the state had the burden of proving an exception to the warrant requirement. The state contended that Barringer merely stopped defendant and reasonable suspicion supported the stop or, alternatively, that

Barringer had probable cause to arrest defendant. Further-more, the state asserted that the officers would have inevitably discovered the paystubs in defendant's pockets during an inventory at the treatment facility. The trial court concluded that defendant was arrested at the time that he was handcuffed and placed in the patrol car, that Barringer did not have probable cause for that arrest, and that the state's inevitable discovery argument lacked merit. Accordingly, the trial court granted defendant's motion to suppress. The state appeals, and the parties renew their arguments on appeal.

■ We first consider whether Barringer arrested defendant before the guest identified him.[1] The parties agree that Barringer at least stopped defendant during the initial encounter on Riverside and that defendant was arrested at the Cascade Inn at the time that Arnold read defendant *Miranda* warnings. The officers' arrest of defendant was lawful if it was supported by probable cause. If the officers' arrest was unlawful, evidence that they discovered because of the unlawful arrest is subject to suppression under Article I, section 9, of the Oregon Constitution.[2] *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005). Accordingly, we must determine when the stop escalated into an arrest. To do so, we make "a fact-specific inquiry into the totality of the circumstances of the particular case." *Ehly*, 317 Or at 78.

■ During a stop, a police officer may make a reasonable inquiry, but "[t]he detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time." ORS 131.615(2). An officer may also "use the degree of force reasonably necessary to make the stop and ensure the

---

[1] Defendant argues that we should not consider the state's assignment of error because defendant raised arguments under both the federal and state constitutions to the trial court and the state did not argue, in its opening brief, that the trial court erred under the federal constitution. The state argues that, because the federal standard is less stringent, *see State v. Anfield*, 313 Or 554, 562, 836 P2d 1337 (1992) (so stating), if we determine that the arrest was not supported by probable cause under Oregon law, we need not reach the federal question. Because we determine that the officer lacked probable cause to arrest defendant under Oregon law, we need not consider defendant's argument further.

[2] Article I, section 9, of the Oregon Constitution provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

safety of the peace officer, the person stopped or other persons who are present." ORS 131.615(5). However, the duration of the detention or intensity of the officer's actions can convert a stop into an arrest under Article I, section 9. *State v. Johnson*, 120 Or App 151, 157, 851 P2d 1160, *rev den*, 318 Or 26 (1993). Although an officer who is confronted with safety concerns may handcuff a person or place a person in the officer's patrol car without converting the stop into an arrest, the stop is converted into an arrest if the officer handcuffs the person after the officer's safety concerns are relieved. *State v. Wereowinski*, 179 Or App 522, 527-29, 40 P3d 545 (2002).

■ Under the totality of the circumstances here, we conclude that Barringer converted the stop into an arrest when, after frisking defendant and determining that defendant had no weapons, Barringer handcuffed defendant and placed him in the patrol car. *See State v. Morgan*, 106 Or App 138, 142, 806 P2d 713, *rev den*, 312 Or 235 (1991) (an officer converts a stop into an arrest by handcuffing the defendant if the officer had previously frisked the defendant and determined that the defendant had no weapons). Moreover, Barringer continued the detention and inquiry away from the vicinity of the stop when he drove defendant one-third of a mile to the Cascade Inn. *See Jasper v. MVD*, 130 Or App 603, 608, 883 P2d 244 (1994) (an officer's transportation of a person three blocks from the stop constitutes an arrest).

■ ■ We next consider whether Barringer had probable cause to arrest defendant. "The determination of probable cause is a legal, not a factual, conclusion. Probable cause does not require certainty." *State v. Herbert*, 302 Or 237, 241, 729 P2d 547 (1986). Probable cause requires that (1) a law enforcement officer subjectively believes that the person has committed a crime and (2) the officer's belief is objectively reasonable under the circumstances. We evaluate the objective prong by considering whether, under the totality of the circumstances, the officer's belief is reasonable. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009).

■ The state argues that Barringer had objective probable cause to arrest defendant at their initial encounter on

Riverside south of the Cascade Inn based on the following circumstances: (1) defendant's behavior was "strange and furtive" when Barringer approached him; (2) Barringer encountered defendant one-third of a mile from the Cascade Inn, where Barringer knew a crime had recently been committed; (3) defendant wore a gray hooded sweatshirt just as the suspect reportedly wore; (4) defendant was the only person seen outside; and (5) defendant was intoxicated. Under the totality of the circumstances, we conclude that Barringer did not have objective probable cause to arrest defendant.

■ The first of the circumstances that the state relies on, defendant's "strange and furtive behavior," is irrelevant to our inquiry in this case. Barringer's testimony that defendant tried to avoid an interaction with Barringer, but stopped when ordered and then refused to answer Barringer's questions, does not constitute strange or furtive behavior. Defendant had a constitutionally protected right to refuse to answer Barringer's questions. *See State v. Davis*, 234 Or App 106, 113, 227 P3d 106 (2010) (holding that individuals have a constitutionally protected right not to speak with police officers). A person's assertion of a constitutionally protected right must play no part in the probable cause inquiry. *State v. Gressel*, 276 Or 333, 339, 554 P2d 1014 (1976) ("[A] suspicion, however well founded, having been aroused merely on the basis of an assertion of one's constitutional rights [not to be searched], can play no part in creating probable cause for a search."); *see also State v. Brown*, 110 Or App 604, 610-11, 825 P2d 282 (1992) (to allow "the police to conduct a search on the basis of the assertion of a privacy right would render the so-called right nugatory"). Thus, defendant's exercise of his constitutionally protected right to not answer Barringer's questions does not affect our probable cause analysis.

We are left with four additional circumstances: defendant wore a gray hooded sweatshirt like the suspect, Barringer found defendant one-third of a mile from the crime scene, defendant was the only person seen in the vicinity, and defendant was intoxicated. None of those circumstances is independently sufficient to establish probable cause. The description of defendant was generic, and defendant's presence one-third of a mile from the crime scene cannot give rise

to probable cause by itself, even if he was the only person seen within one-third of a mile of the crime scene. *See Gressel*, 276 Or at 338 (an officer does not have probable cause based on a generic suspect description or the defendant's presence one-quarter to one-half of a mile from the crime scene). Furthermore, the state fails to explain and we do not perceive how defendant's intoxication makes it more likely that defendant was responsible for the criminal activity at the Cascade Inn.

Taking those circumstances as a whole, we still conclude that the state failed to establish that Barringer had objective probable cause. In *Vasquez-Villagomez*, 346 Or at 25-26, the court concluded that a witness's description of two suspects, "a taller shooter and his shorter companion—both identified by race, gender, age, weight, and height," did not establish probable cause because the description was too generic. However, the court went on to consider the matching description in light of the ongoing investigation into two murders. A third person had contacted a district attorney concerning two murders. After making that contact, the third person traveled from Portland to Salem to meet with the two defendants. In the investigating officers' experience, that meeting suggested that the two defendants and the third person collaborated in the murders. Therefore, the court concluded that the officers had probable cause to arrest the defendants.

Here, the description of defendant—a person wearing a gray hooded sweatshirt and viewed from the rear by a person not wearing his glasses—is more generic than the description in *Vasquez-Villagomez*, where the description included the defendants' race, gender, age, weight, and height. Unlike *Vasquez-Villagomez*, the context of the ongoing investigation does not help the state. Although defendant was one-third of a mile away from the crime scene four minutes after the crime was reported, that proximity is insufficient to establish probable cause. *See Gressel*, 276 Or at 335, 338 (holding that an officer did not have probable cause when the defendant matched the description of the suspect—white adult male wearing a dark hip-length jacket—and the defendant was found one-quarter to one-half mile from the crime

scene). Although defendant was the only person the officers saw in the vicinity of the Cascade Inn, that circumstance provides limited help because the officers were responding to a report that the suspect was walking north on Riverside, but Barringer encountered defendant walking south on Riverside. Moreover, Barringer testified that he believed that defendant had walked "three-tenths of a mile in four minutes while extremely intoxicated." In context, Barringer's testimony illustrates that he believed that defendant tipped over the vending machine, started walking north on Riverside, turned around and walked three-tenths of a mile (or one-third of a mile, as Barringer later testified) south on Riverside to the place Barringer encountered defendant, and that defendant did all of that while "extremely intoxicated." In light of the facts that the suspect description was generic, defendant was walking in the opposite direction from the suspect, and Barringer believed that defendant was "extremely intoxicated," we conclude that Barringer did not have objective probable cause to arrest defendant. The seizure was unlawful.

■ Finally, the state argues that, even if defendant was unlawfully seized, the evidence of paystubs discovered in defendant's pockets should not be suppressed because they would have been inevitably discovered. Generally, evidence that police officers discover as a result of an unlawful seizure must be suppressed under Article I, section 9. An exception is that evidence that law enforcement officers would have inevitably discovered will not be suppressed. *Hall*, 339 Or at 25. Barringer testified that the contents of defendant's pockets would have been removed and inventoried at the treatment facility. The state relies on Barringer's general description of the treatment facility's inventory procedure[3] to conclude that "upon check-in at the treatment facility, the contents of

---

[3] Specifically, Barringer testified about the inventory procedure:

"Once at detox you bring him back—you bring him inside the facility. You put him up—you have him stand in front of the desk, take off his handcuffs, you have him sit in the chair that's next to it.

"At that point, he's emptying out his pockets into the basket. He's taking off his shoes, watches, necklaces, rings, anything of value he might have on him. At that point he puts it all in the basket."

defendant's pockets would have been removed and inventoried. The items in defendant's pockets * * * therefore would have been discovered during that inventory process." Defendant responds that the state failed to meet its burden of proving that the evidence would have been inevitably discovered through proper and predicable investigatory procedures.

■ ■ To prevail on a theory of inevitable discovery by inventory, the state must prove by a preponderance of the evidence that the inventory would have been conducted according to a properly authorized administrative program so that the inventory involves no exercise of discretion, and that the evidence would have been discovered during the inventory. *See State v. Herrin*, 323 Or 188, 195, 915 P2d 953 (1996) (stating rule). An inventory policy is properly authorized if it is adopted by politically accountable officials. *State v. Atkinson*, 298 Or 1, 10-11, 688 P2d 832 (1984). Here, the state did not produce any evidence that a politically accountable authority promulgated the inventory policy. Barringer testified about his general understanding of how an inventory at the treatment facility worked. That testimony is insufficient to prove that a properly authorized inventory policy existed. *See State v. Redmond*, 114 Or App 197, 202, 834 P2d 516 (1992) ("[E]ven assuming that the wallet was seized pursuant to a valid inventory procedure, [the officer's] testimony that there would have been a 'thorough search' of the wallet presented only his *impressions* of the inventory procedure and did not establish what the Clackamas County Jail's policies were." (Emphasis in original.)). Also, Barringer testified that an inventorying officer would have required defendant to place the contents of his pockets in a basket. Barringer's testimony does not establish that a law enforcement officer at the treatment facility would have inspected the paystubs that defendant would have placed in the basket. *See State v. Mituniewicz*, 125 Or App 41, 46, 864 P2d 1359 (1993) (holding that the state's inevitable discovery argument failed where "the state presented no evidence that the booking inventory would have inevitably included inspection of the contents of the paper" in the defendant's pockets, which was partially folded and held heroin).

In sum, we conclude that the trial court did not err in suppressing evidence that police officers discovered after

defendant was unlawfully arrested. The officers would not have discovered the evidence but for the unlawful arrest of defendant and the state failed to prove that the evidence would have been inevitably discovered.

Affirmed.