POWERS, J.
*677 Defendant appeals from a judgment of conviction for possession of methamphetamine, ORS 475.894, entered after a conditional guilty plea, arguing that the trial court erred by denying his motion to suppress methamphetamine evidence that was seized following his arrest. The trial court concluded that, although the search and seizure was not lawfully incident to defendant's arrest for harassment, the evidence was nevertheless admissible because it inevitably would have been discovered during the booking process conducted in accordance with the jail's inventory policy. Defendant argues that the inventory policy at issue is unconstitutionally overbroad because it authorized, without qualification, the search of all closed containers and that-even though the evidence *460 at issue was not in a closed container-that defect rendered the policy as a whole improperly promulgated and, thus, invalid as a basis of purported inevitable discovery. The state contends that the trial court correctly concluded that the drug evidence inevitably would have been discovered by operation of the portions of the written inventory policy that it submitted into evidence and that would have been utilized in conducting an inventory of defendant at the jail. On this record, we agree with defendant and, accordingly, reverse and remand.
We review the trial court's denial of defendant's motion to suppress for legal error. State v. Ehly , 317 Or. 66, 75, 854 P.2d 421 (1993). We are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them. Id. To the extent that the trial court did not make express factual findings and there is evidence from which the facts could be decided in more than one way, we will presume that the court found the facts in a manner consistent with its ultimate conclusion. State v. Maciel-Figueroa , 361 Or. 163, 166, 389 P.3d 1121 (2017). We describe the facts in a manner consistent with that standard.
Oregon State Police (OSP) Trooper Weaver received a report from Grant County Dispatch indicating that the Crook County Sheriff's Office had probable cause to arrest defendant for harassment. Weaver then initiated a stop *678 of a truck in which defendant was a passenger. Weaver ordered defendant to step out of the vehicle, placed defendant in handcuffs, and explained to defendant that he had probable cause to arrest defendant for harassment in Crook County. Weaver then asked defendant if he had "[a]nything sharp, anything that would poke me, stab me, hurt me?" Defendant responded, "I hope not, man." Weaver then asked defendant if he had any needles on him, to which defendant eventually replied, "Don't do needles, man. You got nothing to worry about." Weaver then conducted a search of defendant. During the search, Weaver shined his flashlight down into defendant's coin pocket and noticed that something was inside. He used a "pen or something" to retrieve what turned out to be a small, clear plastic bag containing a bindle of methamphetamine.
Weaver transported defendant to the Grant County Jail and transferred custody of defendant to Deputy Derosier, the intake corrections deputy. According to Weaver, Derosier conducts his own search at the jail "just to make sure that there's no contraband on them before they bring them into the jail."
Defendant was charged with one count of unlawful possession of methamphetamine, ORS 475.894. Defendant filed a motion to suppress, among other things, the methamphetamine evidence found during the search of defendant's coin pocket, arguing that the warrantless search did not fall within any of the exceptions to the warrant requirement.[1] The state, in its written response, argued that the discovery of the methamphetamine was in accordance with an OSP policy of searching arrestees before placing them in police vehicles. The state also argued that, even if the search of defendant before being transported to the jail was not a lawful inventory, "the drugs inside defendant's coin pocket would inevitably have been discovered when the jail inventoried the defendant during the booking process."
*679 At the hearing on the motion to suppress, the state, through the testimony of Derosier, introduced as evidence two written excerpts of the Grant County Jail's inventory policy, labeled B-103 and B-301. The excerpt labeled B-103 provides, in part, that "[a]ll inmates will be pat searched or frisked searched *** immediately upon entering the facility." The excerpt labeled B-301 provides, in part, that during inventory, the booking deputy or the arresting officer shall "remov[e] any items found from pockets, etc."
Following the introduction of those excerpts of the inventory policy, defense counsel asked Derosier a series of questions elaborating *461 on the content of the jail's inventory policy.
"[DEFENSE COUNSEL]: And under this policy, you said you would certainly turn, you know, pants pockets inside out, I believe?
"[DEPUTY]: Yes.
"[DEFENSE COUNSEL]: Do you search all closed containers pursuant to this policy?
"[DEPUTY]: If they stay. If they stay they are thoroughly searched. They also take the clothes from them, and then they are searched again.
"[DEFENSE COUNSEL]: Okay. So if there was, say, a film canister or something in a pocket, you would open that and look in it?
"[DEPUTY]: Absolutely."
At closing, the state focused its argument on the doctrine of inevitable discovery, arguing that, "[i]f the court finds that [the search prior to transport to jail] wasn't permissible, then the evidence would have been found inevitably by the jail."
Defendant, in response, argued that, "even if it was an authorized policy, *** it's an unlawful policy, it's overbroad under both the [state and federal constitutions], because it does allow things such as searches of closed containers, according to Deputy Derosier's testimony."
*680 The trial court denied defendant's motion to suppress the seized methamphetamine.[2] As an initial matter, the trial court concluded that the search was not justified under either the officer safety exception or the search incident to arrest exception to the warrant requirement, as the officer was not "searching for evidence of the crime for which defendant was arrested, i.e., harassment." However, the court also concluded that "the methamphetamine would have been inevitably discovered upon the search of defendant's belongings at the Grant County Jail pursuant to the Grant County Jail's inventory policy[.]"
On appeal, defendant assigns error to the trial court's denial of his motion to suppress the seized methamphetamine and renews his argument that "[t]he admission of the methamphetamine evidence was not justified by the inevitable discovery doctrine because the Grant County Jail inventory policy impermissibly authorizes searches of all closed containers." Defendant argues that the combination of the excerpts of the jail's inventory policy (B-103 and B-301) that were entered into evidence and Derosier's testimony that deputies will open and search "all closed containers pursuant to [that] policy" establishes that the inventory policy is unconstitutionally overbroad. Moreover, defendant contends that, "[e]ven though the search in this case did not involve the search of a closed container, the state cannot rely on an unconstitutionally overbroad inventory policy to prove its theory of inevitable discovery."
The state, in response, argues for the first time on appeal that the portions of the written policy in the record say nothing about container searches and that Derosier's testimony, "[a]t most, *** shows that this particular deputy may have believed he was required to search all closed containers. That does not speak to the requirements of the policy itself." (Emphasis in original.) The state contends also for the first time on appeal that, when it seeks to rely on *681 inevitable discovery by inventory, it need not "preemptively rebut any potential argument that the policy as a whole is unconstitutionally overbroad." According to the state, there was no reason to introduce the entire inventory policy into evidence, as it was sufficient to introduce only the portions that were relevant to its argument. The state acknowledges that the written excerpts of the jail inventory policy that it proffered do not address inspection of the contents of closed containers and that the policy may include other provisions pertaining to such searches, but asserts that, because the text of such *462 provision(s) is not a part of this record, it would be impermissibly speculative to conclude, based on Derosier's testimony, that the inventory policy is unconstitutionally overbroad.
Importantly, the state does not contend that Derosier's testimony pertained to a different, legally distinct-and separately authorized-policy from that embodied in part in B-103 and B-301. Indeed, such a contention would be irreconcilable with Derosier's acquiescence on cross-examination with defense counsel's baseline reference to "this policy." (Emphasis added.) Thus, the state does not dispute that Derosier's testimony demonstrating unconstitutional overbreadth related to the same jail inventory policy that governed defendant's intake.
Under Article I, section 9, of the Oregon Constitution, warrantless searches are per se unreasonable, unless the search is conducted in accordance with one of the recognized exceptions to the warrant requirement. State v. Connally , 339 Or. 583, 587, 125 P.3d 1254 (2005). On appeal, there is no contention that a "recognized exception" justified the warrantless search of defendant's pocket. Rather, the issue in this case is whether the methamphetamine evidence obtained as a result of that unlawful search inevitably would have been discovered by a search conducted under a valid inventory policy. The inevitable discovery doctrine "permits [the state] to purge the taint of illegally obtained evidence by proving, by a preponderance of the evidence, that such evidence inevitably would have been discovered, absent the illegality, by proper and predictable police investigatory procedures." State v. Miller , 300 Or. 203, 225, 709 P.2d 225 (1985), cert. den. , 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986). To prevail on *682 an inevitable discovery theory, the state must establish, "by a preponderance of the evidence: (1) that certain proper and predictable investigatory procedures would have been utilized in the instant case, and (2) that those procedures inevitably would have resulted in the discovery of the evidence in question." Id. at 226.
Here, the trial court concluded that the evidence inevitably would have been discovered upon the search of defendant's belongings at the jail in accordance with the jail's inventory policy. "To prevail on a theory of inevitable discovery by inventory, the state must prove by a preponderance of the evidence that the inventory would have been conducted according to a properly authorized administrative program so that the inventory involves no exercise of discretion, and that the evidence would have been discovered during the inventory." State v. Medinger , 235 Or. App. 88, 97, 230 P.3d 76 (2010). The scope of an inventory "must be limited to that-an inventory." State v. Atkinson , 298 Or. 1, 10, 688 P.2d 832 (1984). "An inventory policy that requires police to open all closed containers, regardless of whether they are likely to contain valuables, is overbroad." State v. Williams , 227 Or. App. 453, 457, 206 P.3d 269 (2009) (citations omitted).
Defendant relies on State v. Nordloh , 208 Or. App. 309, 144 P.3d 1013 (2006), and State v. Cherry , 262 Or. App. 612, 325 P.3d 813 (2014), for the proposition that, if any part of the inventory policy is invalid, even if the inventory at issue would not have been conducted in accordance with the invalid portion, then any evidence discovered must be suppressed as part of an unlawful inventory. On this record, and given the particular and limited nature of the state's response, as elaborated in Judge DeVore's concurrence, we agree.
In Nordloh , evidence was seized from the defendant's vehicle in accordance with an inventory policy pertaining to impounded vehicles. 208 Or. App. at 311, 144 P.3d 1013. The written inventory policy provided that "all impounded vehicles shall be inventoried" and that "[a]ll luggage and other containers will be opened and inventoried." Id. During the inventory of the impounded vehicle, an officer discovered a zippered pouch in a hole in the vehicle's door and opened *683 the pouch because he believed it to be a coin purse. Id. The officer found drug paraphernalia, and subsequently the defendant was charged with possession of a controlled substance. Id. The defendant moved to suppress the evidence seized during the inventory, arguing that the inventory policy was invalid because it required the police to search all closed *463 containers. Id . The state conceded that an officer following the policy could conceivably violate constitutional protections, but argued that the officer's actions were not unconstitutional because he searched a container designed to hold valuables. Id. at 311-12, 144 P.3d 1013. The trial court agreed with the state and denied suppression. Id. at 312, 144 P.3d 1013.
On appeal, the state posited that, in assessing the lawfulness of inventories, we "must look at the facts of each case to determine whether the actions of the officer involved were unconstitutional." Id. at 312, 144 P.3d 1013. We disagreed. "Whether the policy itself is properly authorized does not depend on the circumstances of the application of the policy to a particular defendant. It instead depends on the reasonable relationship between the conduct permitted under the policy and the government's interests in protecting property, eliminating false claims, and preventing injury." Id. at 313, 144 P.3d 1013. We concluded that no such relationship existed under the circumstances of that case and therefore we concluded that, because the inventory policy "requires an officer to open all closed containers in an impounded vehicle, it is not reasonably related to protecting property or eliminating false claims." Id. at 314, 144 P.3d 1013.
Later, in Cherry , we reiterated that, "[i]f an inventory policy is overbroad, an inventory conducted pursuant to the policy violates Article I, section 9." 262 Or. App. at 617, 325 P.3d 813 (citing Nordloh , 208 Or. App. at 312-14, 144 P.3d 1013 ).
Here, the burden is on the state to prove, "by a preponderance of the evidence that the inventory would have been conducted according to a properly authorized administrative program so that the inventory involves no exercise of discretion." Medinger , 235 Or. App. at 97, 230 P.3d 76. On this record, the state did not meet its burden of demonstrating that the predicate inventory policy was "properly authorized." Atkinson , 298 Or. at 10, 688 P.2d 832. That is so because Derosier's uncontroverted testimony establishes that the policy was unconstitutionally *684 overbroad in that it categorically sanctioned the search of all closed containers, and the state has not asserted, much less demonstrated, that the policy's unconstitutional features are somehow severable from the other provisions (B-103 and B-301) that the state invokes in support of its inevitable discovery contention.
In arguing that Derosier's testimony does not establish that the jail's policy is overbroad, the state asserts that "[a]t most, it shows that this particular deputy may have believed he was required to search all closed containers. That does not speak to the requirements of the policy itself." (Emphasis in original.) The problem with that argument is that it was not raised as a factual or legal matter during the suppression hearing. That is, the state never attempted, by redirect examination, to qualify or clarify Derosier's admission or to offer any other evidence pertaining to the policy's prescribed procedures for inspection of closed containers during intake. Nor, as noted, has the state ever suggested, much less substantiated, that the part of the policy described by Derosier is somehow severable.
In sum, on this record, the inventory policy is overbroad because it authorized the search of all closed containers regardless of whether they are likely to contain valuables, and thus cannot be relied upon as the basis of the state's theory of inevitable discovery. Accordingly, the trial court erred in denying defendant's motion to suppress the methamphetamine evidence.
Reversed and remanded.

Defendant's suppression motion also requested an order suppressing the contents of the vehicle discovered during a search and statements made by defendant that were illegally obtained. The trial court's disposition of those matters, see 290 Or. App. at ---- n.2, ---P.3d ----, are not at issue on appeal.

The trial court granted defendant's motion to suppress with respect to defendant's statements, concluding that they were obtained in violation of his right to counsel and his right to remain silent. The trial court also granted defendant's motion to suppress the evidence obtained as a result of the search of defendant's vehicle, concluding that there was a violation of defendant's right against unreasonable search and seizure. Those rulings are not at issue on appeal.