Argued and submitted June 20, affirmed November 27, 2019, petition for review denied February 20, 2020 (366 Or 205)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHANE WILLIAM HEWITT,
*Defendant-Appellant.*

Malheur County Circuit Court
17CR13809, 15CR1493;
A165988 (Control), A165987

454 P3d 830

Defendant appeals from judgments in two cases, consolidated on appeal. In the first case, defendant appeals from a judgment of conviction for supplying contraband, ORS 162.185. In the second, defendant appeals from a supplemental judgment revoking defendant's probation on a coercion conviction. Defendant assigns error to the trial court's denial of his motion to suppress evidence discovered during an inventory of defendant's property at the Malheur County Jail. That evidence formed the basis for defendant's supplying contraband conviction and, in part, the trial court's decision to revoke defendant's probation on the coercion conviction. *Held*: The trial court did not err in denying defendant's motion to suppress the evidence. The deputy who conducted the inventory of defendant's personal property adhered to and acted within the scope of the applicable inventory policy.

Affirmed.

Lung S. Hung, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services, argued the cause and filed the brief for appellant.

Benjamin Gutman, Solicitor General, argued the cause for respondent. Also on the brief was Ellen F. Rosenblum, Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

Affirmed.

## SHORR, J.

Defendant appeals from judgments in two cases, consolidated on appeal. In the first case, Case No. 17CR13809, defendant appeals from a judgment of conviction for supplying contraband, ORS 162.185. In the second, Case No. 15CR1493, defendant appeals from a supplemental judgment revoking defendant's probation on a coercion conviction. Defendant assigns error to the trial court's denial of his motion to suppress evidence discovered during an inventory of defendant's property at the Malheur County Jail. The discovery of that evidence resulted in defendant's supplying contraband charge in Case No. 17CR13809. Defendant also argues that, because defendant's conviction in Case No. 17CR13809 formed, in part, the basis for the trial court's decision to revoke defendant's probation in Case No. 15CR1493, we should reverse the supplemental judgment revoking probation and remand for further proceedings in that case. We conclude that, because the deputy adhered to and acted within the scope of the Malheur County Jail inventory policy, the trial court did not err in denying defendant's motion to suppress evidence. We therefore affirm both judgments.

We review the trial court's denial of defendant's motion to suppress for errors of law. We are bound by the court's findings of fact provided that there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We state the facts in light of that standard.

Defendant was convicted of coercion on December 23, 2015, and was sentenced to 36 months of supervised probation in that case. On February 21, 2017, defendant reported to the Malheur County Community Corrections office where he was arrested by his probation officer for alleged probation violations. Defendant was then transported to the Malheur County Jail, where Deputy Butler of the Malheur County Sheriff's Office initiated the intake process.

As part of that process, Butler conducted an inventory of the clothing and personal property that defendant brought into the jail. After taking defendant's property and listing that property on an inmate property form, Butler

gave the form to defendant to sign. The form listed a number of items, including a black jacket. Defendant signed the form. Butler then left defendant's property in the booking area while he attended to other matters. Several hours later, Butler resumed handling defendant's property in order to prepare the property for storage and hang defendant's jacket. At that point, Butler felt something inside of the jacket's left inner pocket that he had not felt before, because, according to Butler, it had likely been lodged in the corner of the pocket or possibly felt like lint. Because Butler believed the item might be valuable, he reached into the jacket pocket and retrieved a clear plastic baggie that contained a crystalline substance. Butler seized the baggie and subsequently tested it. The substance tested positive for methamphetamine.

As a result of Butler's discovery, defendant was charged with supplying contraband. Defendant moved to suppress the evidence, arguing that the inventory was unlawful because Butler deviated from the inventory policy when he examined the contents of defendant's jacket pocket several hours after defendant signed the inmate property form. The trial court denied defendant's motion to suppress, concluding that Butler had adhered to the specified procedures in the inventory policy when he pulled the baggie of methamphetamine from defendant's jacket pocket. Defendant proceeded to trial, and he was convicted. At a subsequent probation violation hearing, defendant's probation was revoked, in part due to defendant's new conviction for supplying contraband.

On appeal, defendant assigns error to the trial court's denial of his motion to suppress the evidence discovered during the inventory. Defendant renews his contention that Butler deviated from the inventory policy by examining the contents of defendant's pocket after taking and inventorying defendant's property on an inmate property form, obtaining defendant's signature on that form, and then leaving defendant's property unattended for several hours. In response, the state argues that the trial court correctly concluded that Butler did not deviate from the inventory policy in this case, because the policy did not preclude Butler from

handling the property or examining the item in defendant's pocket after defendant signed the property form.

Defendant also asserts, for the first time on appeal, two additional arguments: that Butler deviated from the policy by hanging defendant's jacket instead of storing it in a plastic bin as the policy directs and that the inventory policy is overbroad in violation of Article I, section 9, of the Oregon Constitution. The state responds that defendant's additional arguments are unpreserved. Because the trial court never had an opportunity to respond to the issues raised by those arguments, we agree and decline to address them. Defendant also argues that, because the policy is overbroad in violation of Article I, section 9, the trial court committed plain error by failing to grant defendant's motion to suppress on the basis of that argument. We reject defendant's plain-error argument without further written discussion.

Our decision here is limited in scope. Because we do not address defendant's unpreserved arguments, we do not decide whether the policy is unconstitutionally overbroad. Nor do we determine whether the policy is itself improper or invalid for other constitutional reasons that were not raised on appeal, such as the amount of discretion granted to the deputies.[1] The sole issue we resolve is whether Butler deviated or adhered to the applicable inventory policy when, after obtaining defendant's signature on the property form, he left defendant's items of personal property for several hours and then examined an item in defendant's pocket while preparing the property for storage.

Article I, section 9, prohibits unreasonable searches. A warrantless search is *per se* unreasonable unless it falls within one of the recognized exceptions to the warrant requirement. *State v. Connally*, 339 Or 583, 587, 125 P3d 1254 (2005). One such exception allows for the administrative "inventory" of a person's property in law enforcement

_____

[1] The trial court found that the contents of the clear baggie were in plain view after being pulled from defendant's jacket as part of the inventory search. The trial court further found that the deputies believed, based on their observations and training, that the substance inside the baggie was methamphetamine. The trial court then concluded that the search and subsequent testing of the substance did not violate Article I, section 9. On appeal, defendant does not challenge those aspects of the ruling.

custody, typically carried out when police impound a vehicle, or when a person is being booked into a custodial facility. *State v. Hite*, 266 Or App 710, 719, 338 P3d 803 (2014). In accordance with a valid inventory policy, law enforcement officers inventory a person's property or effects "to protect the owner's property, to reduce the likelihood of false claims against the police, and to protect the safety of the officers." *Connally*, 339 Or at 587. The purpose of an inventory is not to discover evidence of a crime. *Id*.

To fall within the recognized exception, "a lawful inventory must satisfy three requirements." *State v. Stinstrom*, 261 Or App 186, 190, 322 P3d 1076 (2014). First, the state must have lawful custody of the property to be inventoried. *Id*. (citing *State v. Atkinson*, 298 Or 1, 8-9, 688 P2d 832 (1984)). Second, the inventory "must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Atkinson*, 298 Or at 10. Lastly, the law enforcement person conducting the inventory must not deviate from the authorized policy or procedure. *Id*.

Defendant's argument challenges only whether the inventory conducted in this case satisfied the third requirement—that is, whether Butler adhered to the Malheur County Sheriff's Office inventory policy in carrying out the inventory of defendant's property. Many of our cases addressing that requirement focus on whether the applicable inventory policy authorized the officer to open a particular type of closed container, which is also not at issue here. *See, e.g.*, *State v. Salkoski*, 299 Or App 180, 184-85, 448 P3d 718 (2019) (inventory policy permitting officer to open containers "designed for or likely to contain money or small valuables" authorized officer's opening of backpack); *State v. Keady*, 236 Or App 530, 534, 237 P3d 885 (2010) (inventory policy that directed officer to open only containers "designed to hold valuables" did not authorize officer's opening of "fish oil capsule container").

Fewer cases address the issues raised by defendant, but *State v. Brown*, 229 Or App 294, 211 P3d 315 (2009), and

*State v. Rowell*, 251 Or App 463, 283 P3d 454, *rev den*, 353 Or 127 (2012), provide some relevant guidance. In *Brown*, a deputy arrested the defendant and subsequently searched his pockets, where the officer found incriminating evidence. We held that the deputy in that case acted consistently with the applicable inventory policy, which authorized the police to conduct "[i]nventories of the personal property" of an arrestee, and to "remove all items of personal property from the clothing worn by [the arrestee]." 229 Or App at 303-04. In *Rowell*, we determined that the officer's search of a laptop bag did not adhere to the controlling inventory policy. There, the officer opened and examined the contents of the laptop bag after the arrestee was placed in the back of a patrol car, but the inventory policy permitted police to conduct inventories only before placing an arrestee in a police vehicle. 251 Or App at 471-72.

We begin our analysis with a discussion of the relevant policy. At the motion to suppress hearing, the state introduced two orders of the Malheur County Sheriff's Office, General Order J 7.06 and General Order J 08.02, as evidence of the inventory policy that granted Butler the authority to conduct the inventory. General Order J 7.06 provides, in part:

"**POLICY**

"**I**

"It shall be the policy of the Malheur County Sheriff's Office to ensure that all inmate personal property, including monies, is received, stored, and released in a safe, secure and systematic manner in accordance with the law.

"**PROCEDURE**

"**II**

"A.   When an inmate is lodged into the Malheur County Jail, all personal property including clothing, jewelry, money, etc. will be taken, receipt given and stored.

"＊＊＊＊＊

"G.   All items of inmates['] personal property will be inventoried on an Inmate Property Form (including all items in bags, purses and/or wallets), including those items which

are retained by the inmate or confiscated/retained by the arresting/transporting officer, and the form will be signed by the prisoner and cosigned by the receiving deputy.

"H.   Inmate shoes and clothing will be placed in a plastic storage box and stored securely in the Property Room ***. ***

"I.   All money will be taken and accounted. A receipt will be given to the inmate and money will be placed into the designated safe."

(Boldface in original.)

General Order J 08.02 governs all inmate search procedures. The pertinent part provides:

### "**PROCEDURES**

### "**III**

"*****

"B.   Searches of inmates should be conducted on a routine and random basis. Special attention should be given to inmates:

"1.   At the admission process. Inmate clothing should be searched to complete the inventory process and to protect against possible claims of misappropriation by staff members, and as a means of interdicting the introduction of illegal and contraband items into the jail[.]"

(Boldface in original.)

Butler also testified about the inventory policy at the suppression hearing, beginning with an explanation of how the Malheur County Jail deputies conduct the standard intake process. The process begins when the deputy responsible for intake escorts the inmate from the jail sallyport to the "intake receiving section." Once there, the deputy performs an initial patdown over the inmate's clothing. Butler testified that, after that patdown, the deputy receives certain items of the inmate's personal property:

"We remove their handcuffs, we ask them to put their hands up on the wall at that point in time, and then we have them remove *** their shoes, their belt if they are wearing a belt, their jacket. They hand the jacket over and

the belt over to us. If they have any jewelry, they remove that as well."

According to Butler, the inmate is taken to a holding cell adjacent to the intake area. Next, the inmate is subject to an "unclothed search," when the last items of the inmate's personal property are taken. Butler explained:

"Once [the inmate is] inside the [holding cell], the property goes behind our booking counter into a property bin that we have that is pre-set up back there for, for them. So we just put the property right inside of it.

"* * * * *

"So we go through [the property]. If we didn't feel anything initially inside the pockets, we just go past those because we didn't find anything. We go through their wallet. If they have a wallet, we go through their wallet.

"We get anything that, we try to notate anything worth value. If it's something that we deem that is valuable, we have to notate and annotate it. So that way, if it gets lost, that we have that in case of we have to do reimbursement or any financial burdens upon the jail. And we go through it and we list everything that we find of value at that point in time."

If the deputy conducting an inventory discovers an item that was not listed on the inmate's property form, the deputy brings the inmate back into the booking area to "redact [the] inventory personal property form and put the valuables on there."

In its ruling on the motion to suppress, the trial court determined that the procedure does not contain a particular "time limit," which it noted was an important factor. Thus, although Butler had logged defendant's items on an inmate property form and placed those items in a plastic bin while he attended to other matters, Butler's examination of the jacket pocket was an inventory authorized by the policy. Under the policy, the court explained, it would expect a deputy to remove and inspect an item discovered during storage to determine whether the item was valuable. Therefore, Butler acted in accordance with the policy when he removed the item for that purpose.

As noted, defendant asserts that the trial court's ruling is incorrect because the policy did not authorize Butler to continue the inventory several hours after defendant signed the inmate property form. As we understand that argument, it contains two separate contentions: (1) that the time lapse itself was a deviation from the policy and (2) that, under the policy, the inventory ended when defendant signed the property form.

With respect to the time lapse, the trial court's finding that the policy contained no "time limit" is supported by evidence in the record. Nothing in the text of the policy, or in Butler's testimony, indicates that the inventory policy imposes a "time limit" on the inventory procedure. The time lapse in this case did not constitute a deviation from the policy set forth in General Orders J 7.06 and J 08.02.

We turn to defendant's assertion that the inventory ended when defendant signed the property form. Defendant argues that the "intake policy contemplates that the inventory that occurs will *precede* an inmate's signed acknowledgement of that property on an Inmate Property Inventory Form." (Emphasis in original.) Specifically, defendant points to sections A and G of General Order J 7.06, which provide that "all personal property including clothing, jewelry, money, etc. will be taken, receipt given and stored" and "[a]ll items of inmates['] personal property will be inventoried on an Inmate Property Form *** and the form will be signed by the prisoner and cosigned by the receiving deputy." According to defendant, because those sections impose an order within the policy, the intake deputy may only examine or "inventory" an inmate's property during the "inventory" step. That is, defendant contends that those sections of the policy necessarily precluded Butler from examining any items discovered after defendant signed the form.

First, we emphasize that the focus of our determination here is whether Butler adhered to or deviated from the inventory policy. As noted, we make no conclusions as to the constitutional validity of the policy itself. Turning to defendant's argument, we conclude that the policy authorized Butler's actions in this case.

General Order J 7.06 states that all inmate prop-
erty "will be taken, receipt given and *stored*." (Emphasis
added.) That wording implies that the inventory process as
a whole does not end until the property has been stored. As
a result, we understand the policy to require an intake dep-
uty to (1) take the inmate's personal property, (2) account for
and list each of those items of property on a form, (3) direct
the inmate to sign the form, and then (4) store the property
in an appropriate manner. Butler followed that procedure
until he reached the "storage" step and felt an unidentified
item. The precise issue then is whether, while engaged in
that "storage" step, Butler was authorized to pull the item
from defendant's pocket in order to determine its nature.
Considering the particular facts of this case and the policy
as a whole, we conclude that the policy authorized Butler to
inspect the item in defendant's jacket pocket.

Importantly, Butler was preparing the property for
storage when he felt the methamphetamine in defendant's
jacket. That is, the inventory process was *in progress* when
he felt the item in defendant's jacket pocket. And, unlike
the policy in *Rowell*, which stated that "[a]n inventory will
occur *prior*" to placing the arrestee in the vehicle, the policy
here does not contain express language dictating a tempo-
ral order. *Rowell*, 251 Or App at 470 (emphasis in original).
Further, we read other aspects of the policy's text to autho-
rize Butler's actions here. For example, Order J 7.06 directs
the deputy conducting the inventory to take "all money"
and "all personal property" and to inventory "all items" of
inmate personal property. Order J 08.02 further provides
that "[i]nmate clothing should be searched to complete the
inventory process." When Butler removed the item from
defendant's pocket, he complied with the policy's clear direc-
tives to search inmate clothing and inventory "all items."
*See Brown*, 229 Or App at 303-04 (officer's removal of items
in arrestee's pockets was authorized by inventory policy
directing police to "remove all items of personal property
from the clothing worn by [the arrestee]").

Butler's testimony also supports the trial court's
determination that a deputy acting under the inventory
policy in this case would not ignore an unidentified item

discovered during storage but would take that item out to see if it is a valuable item and, if so, to log it. Butler testified that, under the policy, he was required to note anything of value. And he explained that, when deputies at the jail discover a new item of inmate property after the inmate has signed an inmate property form, the deputies "redact" the property form, and bring the inmate back to the booking area to sign the redacted inmate property form. This suggests that the policy, at least in practice, contemplates a situation where an intake deputy discovers a new item of inmate property after the "inventory" step is complete. *See State v. Steele*, 290 Or App 675, 684, 414 P3d 458 (2018) (relying on officer testimony to determine the contents of an inventory policy). As noted, we do not decide—because the issue is not before us—whether the policy appropriately eliminated Butler's exercise of discretion.

In sum, the trial court correctly concluded that Butler acted within the scope of the inventory policy set forth by the Malheur County Sheriff's Office when, in the process of storing defendant's property, he felt an item in defendant's jacket pocket and removed it. Therefore, the trial court did not err in denying defendant's motion to suppress. Accordingly, we affirm both judgments.

Affirmed.