Argued and submitted July 31, reversed and remanded December 10, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MEGAN NICOLE BERNABO,
*Defendant-Appellant.*

Deschutes County Circuit Court
04FE1672MS; A131625

197 P3d 610

Daniel C. Bennett argued the cause for appellant. On the briefs were Peter Gartlan, Chief Defender, Legal Services Division, and Tammy W. Sun, Deputy Public Defender, Office of Public Defense Services.

Jeremy C. Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Carson, Senior Judge.

ARMSTRONG, J.

### ARMSTRONG, J.

Defendant appeals a judgment of conviction, based on a conditional plea of guilty, for possession of a Schedule II controlled substance, *former* ORS 475.992(4) (2003), *renumbered as* ORS 475.840(3) (2005). Defendant assigns error to the trial court's denial of her motion to suppress evidence obtained during an inventory of the contents of her car during a traffic stop and from a sunglasses case discovered on the ground at the stop. We conclude that the trial court did not err in denying the motion to suppress the evidence from the sunglasses case but did err in denying the motion to suppress the evidence from defendant's car. Accordingly, we reverse and remand.

The relevant facts are not disputed. Rose, a Deschutes County sheriff's deputy, stopped defendant based on information that defendant was driving her car with a suspended driver's license. Rose approached the car and asked defendant for her license, registration, and proof of insurance. When defendant was unable to provide a driver's license or proof of insurance, Rose told her that he was going to impound her car. While Rose was completing the necessary paper work, another deputy who had arrived on the scene, Sundberg, asked defendant for consent to search the car. When defendant refused the request, Sundberg asked her to get out of the car so that the deputies could inventory its contents. Defendant did so, taking her jacket with her, and was escorted to an area between the two patrol cars and next to a garbage can, where she was directed to wait.

While the tow truck was en route, Rose and Sundberg conducted an inventory of the contents of defendant's car. They did not ask defendant to remove any of her valuables from her car before they conducted the inventory. During the inventory, Rose found a backpack, which he opened. Inside the backpack was, among other things, a purple cosmetic bag containing a small cellophane bindle with a white substance inside and some loose baggies. Rose also found on the floor of the car a ceramic or glass pipe that appeared to have marijuana residue and, on the right front seat, an opened blue cloth wallet containing an additional

small pipe. After the officers completed the inventory, defendant asked them for her backpack and wallet. Rose returned them to her. He then had her sign the inventory record and told her that she could leave.

Meanwhile, Sundberg and a third deputy field tested the white residue in the bindle found in the purple cosmetic bag. When it tested positive for methamphetamine, Sundberg asked defendant, who had started to walk away, to come back to discuss the results of the field test. At that point, Sundberg saw a bright pink sunglasses case on the ground near the trash can where defendant had been standing. A plastic bag similar to the baggies that had been found in defendant's car was sticking out of the case. Based on that similarity, Sundberg believed that the sunglasses case contained evidence of drugs. He opened the case and discovered two baggies containing what was later determined to be methamphetamine. When later questioned, defendant first denied that the case was hers, then said that she had seen it in her car earlier, and, finally, stated that it may have fallen out of her jacket.

Defendant was charged with one count of unlawful possession of a Schedule II controlled substance. At trial, she moved to suppress the evidence discovered as a result of the inventory of the contents of her car. She argued that the inventory was invalid—and thus any evidence discovered as a result of it must be suppressed—because the deputies did not follow the procedures set forth in the applicable inventory policy, specifically, a provision requiring that "[t]he owner or operator of the vehicle shall be asked to remove, if possible, all valuables from the vehicle prior to impoundment."[1] Defendant also argued that the evidence discovered as a result of the search of the sunglasses case should be suppressed because it was a product of the invalid inventory.

The trial court denied defendant's motion, concluding that the inventory was lawful because the inventory policy allowed—but did not require—the person whose vehicle is impounded to remove valuables from the vehicle before the

---

[1] Defendant did not, and does not, challenge the lawfulness of the impoundment of her car.

deputies inventory the vehicle's contents. The court also ruled that the warrantless search of the sunglasses case was valid, "based upon everything the officer knew at the time regarding the controlled substance evidence that had already been found" and because defendant did not have an expectation of privacy in what was "simply a sunglasses case lying on the ground next to a garbage can." Defendant then entered a conditional plea of guilty under ORS 135.335(3),[2] reserving her right to appeal the court's denial of her motion to suppress.

On appeal, defendant largely renews the arguments that she made to the trial court. We begin with defendant's challenge to the trial court's decision on the validity of the inventory. We review a trial court's determination of whether an inventory meets constitutional standards for errors of law, taking as binding the trial court's findings of historical facts if there is evidence in the record to support them. *State v. Boone*, 327 Or 307, 309, 959 P2d 76 (1998). The burden is on the state to prove the lawfulness of the inventory. ORS 133.693(4); *State v. Tschantre*, 182 Or App 313, 318, 50 P3d 1174 (2002).

In *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984), the Supreme Court established that an inventory of the contents of a car does not violate Article I, section 9, of the Oregon Constitution[3] if it meets certain requirements. First, the vehicle must be "lawfully impounded," *id.* at 8, that is, it must be "in lawful administrative custody," *id.* at 10. Second, the inventory "must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Id.* at 10. Finally, the inventory must not deviate from the procedures established in the administrative program. *Id.*

---

[2] ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

[3] Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

In this case, defendant argues that the inventory was invalid under the last requirement. Specifically she asserts that the deputies deviated from the established inventory procedures contained in Deschutes County Code (DCC) 10.24.070. B.2., which provides:

"The owner or operator of the vehicle shall be asked to remove, if possible, all valuables from the vehicle prior to impoundment. If such items cannot be removed, they shall be inventoried before the vehicle is removed, and the owner/operator shall be requested to verify the completeness of the inventory by signature."

According to defendant, that provision requires officers to ask the owner or operator of a car to remove items of value from the car *before* conducting an inventory of its contents. Because the officers did not do that in this case, defendant asserts, the inventory is invalid, and the evidence discovered as a result must be suppressed.

The state responds that the policy does not require the officers to ask an owner or operator to remove valuables from the car before conducting the inventory, but only (unless dictated by safety concerns not present here) before "sending the vehicle to be impounded." The state contends that, properly understood in the context of the policy as a whole, the word "impoundment" as used in subsection B.2. refers to the act of removing the car. The state points particularly to subsection B.1. of DCC 10.24.070., which provides:

"An inventory should be conducted in the location at which the vehicle is seized unless limited by reasons of safety or practicality. If so, it may be inventoried at a later time following *impoundment*." [4]

(Emphasis added.) Thus, in the state's view, the term "impoundment" as used in both sections refers to the removal of the car. Because defendant herself requested and received her valuables, that is, her backpack and wallet, before the car was towed, the officers did not "deviate" from the established procedures.

---

[4] The state also relies for support for its interpretation on paragraph A.1.a., which directs an officer to conduct an inventory "anytime the vehicle has been lawfully seized, forfeited or impounded pursuant to the arrest and/or cite of the driver[.]"

We agree with the state as to the meaning of the term "impoundment," but we disagree with its ultimate conclusion. Specifically, we agree with the state that, considered in context, the term "impoundment" refers to the removal of the car from the place at which it was stopped. Thus, the first sentence of subsection B.2.—"[t]he owner or operator of the vehicle shall be asked to remove, if possible, all valuables from the vehicle prior to impoundment[ ]"—establishes the general rule that an owner or operator of a car subject to impoundment must be given an opportunity to remove items of value from the car at some point before the car is removed. Contrary to the state's assertion, however, that does not resolve the issue. That provision does not speak to the timing of the inventory in relation to the opportunity to remove items of value; in other words, it does not, as the state contends, establish that the request to remove valuables from the car may occur *after* the officer has inventoried the contents of the car, including those valuables, as long as it occurs before the car is taken away. Indeed, the immediately following sentence of subsection B.2. refutes that proposition. Again, it states, "If such items [the valuables] cannot be removed, they shall be inventoried before the vehicle is removed, and the owner/operator shall be requested to verify the completeness of the inventory by signature." That provision makes clear that it is only those valuables that cannot be removed that are to be inventoried. Thus, it necessarily follows that the opportunity to remove the valuables must precede the inventory.

That conclusion is supported by the justifications for authorizing warrantless inventories of impounded vehicles as one of the few specifically established and carefully delineated exceptions to the warrant requirement in Article I, section 9. *Atkinson*, 298 Or at 8-10. As the Supreme Court explained in *Atkinson*, two of the principal purposes for conducting an inventory are (1) to protect the owner's property while in police custody and (2) to discourage false claims against the government for lost or stolen property.[5] 298 Or at 7. "In such a context there is no 'search' for predictable 'things

---

[5] The final purpose identified by the court in *Atkinson* is to reduce the danger to police arising from the impoundment of uninventoried property. 298 Or at 7. Consistent with those principles, the DCC inventory policy specifies:

to be seized' that could be 'particularly described,' as the warrant requirement of Article I, section 9, contemplates." *Id.* at 8.

Our understanding of the Deschutes County inventory policy is consistent with those purposes. It recognizes that the best possible protection against theft, misplacement, and fraudulent claims against the government is simply to remove all valuables from the car. Then, to the extent that that is not possible, items left behind must be inventoried—and the accuracy of that inventory signed and verified by the owner or operator of the car—again, to protect both the owner and the police.

In sum, we conclude that DCC 10.24.070. B.2. requires an officer to ask the owner or operator of a vehicle to remove any valuables from the vehicle before the contents of the vehicle are inventoried. Because the officers deviated from that policy in this case, the inventory is invalid and the trial court erred in denying defendant's motion to suppress the evidence that the inventory uncovered.

■ We turn to the evidence found in the sunglasses case. Relying on *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005), defendant argues that the trial court erred in not suppressing that evidence because it was obtained in exploitation of the unlawful inventory.[6] The state advances two theories in response: (1) under *State v. Crandall*, 340 Or 645, 652-53, 136 P3d 30 (2006), even if the inventory was unlawful, defendant's "unilateral and voluntary choice to put the drugs in plain sight was a sufficiently attenuating intervening circumstance to make suppression unjustified"; and

---

"The purpose of this ordinance is to provide the authority and the procedure for peace officers to conduct inventories of personal property and seized vehicles. Such inventories are necessary to protect private property while in police custody, to reduce or prevent the assertion of false claims for lost or stolen property, and to protect people and property from any hazardous condition or instrumentality that may be associated with the personal property or vehicle."

DCC 10.24.010.

[6] Defendant did not develop below or on appeal an argument that the lawfulness of the inventory affected the determination whether she had abandoned the sunglasses case. *See, e.g., State v. Knox*, 160 Or App 668, 679, 984 P2d 294, *rev den*, 329 Or 527 (1999) (police did not exploit their illegal conduct to compel defendant to abandon a pouch containing drugs in the back of a patrol car).

(2) defendant abandoned her constitutionally protected privacy interest in the sunglasses case when she voluntarily discarded it in a public place.

■    We agree that defendant abandoned her interest in the sunglasses case; thus, we do not address the state's first argument. "[T]he determination whether a defendant has relinquished a constitutionally protected interest in an article of property involves both factual and legal questions [that we] review [ ] in the same manner [as we] review [ ] other search or seizure questions arising under Article I, section 9." *State v. Cook*, 332 Or 601, 607, 34 P3d 156 (2001). Thus, we are bound by the trial court's findings of historical fact if evidence supports them, but we assess anew whether those facts meet constitutional standards. *Id.* (citing *State v. Bea*, 318 Or 220, 230, 864 P2d 854 (1993)).

■■    A defendant who has actual or constructive possession of property immediately before it is searched has a constitutionally protected possessory interest in that property. *State v. Standish*, 197 Or App 96, 99-100, 104 P3d 624, *rev dismissed as improvidently allowed*, 339 Or 450 (2005). A defendant may abandon that constitutionally protected interest by manifesting an intention to relinquish it. *Cook*, 332 Or at 608 ("[F]or constitutional purposes, the question to be resolved * * * is whether the defendant's statements and conduct demonstrated that he relinquished all constitutionally protected interest in the articles of property, so that both the warrantless seizure of the property and the resultant search by the police were reasonable under Article I, section 9.").

■    Factors that are relevant to the determination whether a defendant "manifested an intent to relinquish" a constitutionally protected interest in property include the following:

> "(1) whether a defendant separated himself or herself from the property as a result of police instruction, *Cook,* 332 Or at 609, or illegal police conduct, *State v. Morton*, 326 Or 466, 470, 953 P2d 374 (1998); (2) whether a defendant left the property on private, as opposed to public, property, *State v. Kendall*, 173 Or App 487, 491, 24 P3d 914 (2001); and

(3) whether a defendant made any attempt to hide the property or in any other way manifest an intention to the police that he or she was attempting to maintain control over it, *State v. Dickson*, 173 Or App 567, 575, 24 P3d 909, *rev den*, 332 Or 559 (2001)."

*State v. Stafford*, 184 Or App 674, 679, 57 P3d 598 (2002), *rev den*, 335 Or 181 (2003).

Although the trial court did not make specific findings about defendant's intention to abandon her interest in the sunglasses case, we presume that the court found facts in a manner consistent with its decision. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Consistent with the trial court's conclusion that defendant abandoned any constitutionally protected possessory interest that she had in the sunglasses case,[7] the record supports findings that (1) defendant discarded the glasses case voluntarily, that is, not as the result of police instruction or police coercion; (2) she left it in the open on public property where any member of the public could have found it; (3) she had started walking away from the sunglasses case and stopped only because the officers asked her to come back; and (4) she made no attempt either to hide it or to maintain control over it. Those facts are sufficient, under the factors outlined in *Stafford*, to support the conclusion that defendant abandoned any constitutionally protected possessory interest that she had in the sunglasses case.

Defendant argues nonetheless that "[t]he Oregon courts have never held that the mere lack of physical possession is sufficient to constitute abandonment," but rather, "[m]ore frequently, abandonment involves both a defendant's

---

[7] The trial court concluded:

"I don't see how the Defendant can even have any expectation of privacy in [the sunglasses case]. It's just something lying on the ground next to a garbage can. I don't even know if she's going to claim that it was hers. * * * But it was certainly something the officer—it was in plain view, and based upon * * * the fact that it was simply a sunglasses case lying on the ground next to a garbage can, the officers were not required to get a warrant to open that and look at it."

The state does not argue that it proved below that defendant had no possessory interest in the sunglasses case, which would preclude her from challenging the seizure of it under Article I, section 9. *See State v. Kauffman*, 162 Or App 402, 406, 986 P2d 696 (1999), *rev den*, 329 Or 650 (2000) (the state did not meet its burden of proving that the defendant had no protected interest in affected property).

physical relinquishment of possession of an item coupled with a subsequent verbal disclaimer of any interest."[8] Regardless of the accuracy of that statement, *see State v. Belcher*, 306 Or 343, 759 P2d 1096 (1988) (upholding trial court's finding that the defendant abandoned his backpack when he left it at the scene with no indication when, if ever, he would return for it), it does not compel a conclusion that conduct alone is insufficient to demonstrate the necessary manifestation of an intention to relinquish a possessory interest in an object. In the circumstances of this case, defendant's conduct unquestionably demonstrated her intention to abandon the sunglasses case. Indeed, defendant points to no evidence in the record tending to show that she "manifest[ed] an intention to the police that * * * she was attempting to maintain control over" the sunglasses case. *Stafford*, 184 Or App at 679. The trial court thus did not err in denying the motion to suppress the evidence found when the officers searched the case.

In sum, we reverse the trial court's denial of defendant's motion to suppress the evidence discovered during the inventory of the contents of defendant's car but affirm the trial court's denial of defendant's motion to suppress the evidence found in the sunglasses case. Because defendant's conviction was the result of a conditional guilty plea, which was contingent on her challenge to the denial of her motion to suppress, and that challenge was successful in part, we reverse and remand for defendant to decide whether to withdraw her plea. ORS 135.335(3) ("A defendant who finally prevails on appeal may withdraw the plea."); *State v. Mastin*, 205 Or App 528, 134 P3d 1052 (2006).

Reversed and remanded.

---

[8] We agree with defendant that the statements defendant made *after* the officers searched the sunglasses case are not relevant to the inquiry whether she manifested the necessary intention to relinquish her constitutionally protected interest in it. *Cook*, 332 Or at 608.