Argued and submitted February 19, 2013, reversed
and remanded February 20, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HENRY EDWARD STINSTROM,
*Defendant-Appellant.*

Lane County Circuit Court
231017970; A147484

322 P3d 1076

Elizabeth G. Daily, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

DUNCAN, P. J.

**DUNCAN, P. J.**

In this criminal case, defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of the seizure of his backpack and the subsequent search of the backpack and its contents. For the reasons explained below, we conclude that the seizure violated Article I, section 9, of the Oregon Constitution and that the evidence discovered as a result of the seizure should have been suppressed. Accordingly, we reverse and remand.

We review a trial court's ruling on a motion to suppress evidence for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). When we do, we are bound by the trial court's findings of fact, provided that they are supported by constitutionally sufficient evidence. *Id.* Stated in accordance with that standard, the relevant facts are as follows. On August 12, 2010, Officer McGuire of the Eugene Police Department was dispatched to a park in Eugene in response to an anonymous complaint. When McGuire arrived at the park, defendant and three other men were present. McGuire spoke to one of the other men, Roberts, who was wearing a backpack. When McGuire asked Roberts for identification, Roberts reached for the backpack on his back and said, "Oops, I grabbed the wrong bag." Roberts took off the backpack and placed it on the ground next to defendant, saying, "This is your bag." Defendant began to reach for the backpack, saying, "This is my bag," but McGuire instructed him to stop. Meanwhile, Roberts took his wallet and identification out of another, similar-looking backpack.

McGuire learned that there was an outstanding warrant for defendant's arrest. He took defendant into custody and began to walk with defendant toward his patrol car. They had taken a few steps toward the car when McGuire said, "Oh, I forgot your backpack." In order to retrieve the backpack, McGuire returned to the area where he had first encountered the four men. Defendant said, "That's not my backpack." McGuire retrieved the backpack despite defendant's statement that it was not his backpack.

Once McGuire and defendant arrived at the patrol car, McGuire inventoried defendant's pockets and the backpack. He found a syringe plunger cap in defendant's pants pocket. In the backpack, he found a syringe that was missing its plunger cap, a small plastic baggie, and a shortened plastic drinking straw containing a white crystalline substance, which he believed was methamphetamine. He also found a small spiral-bound notebook. He opened the notebook and read a letter, which began, "Greetings, mother, it is I Henry, youngest child." Defendant's first name is Henry.

McGuire lodged defendant in the Lane County Jail on the outstanding warrant and for possession of methamphetamine. McGuire filled out a property receipt form and secured the backpack in a locker located outside the jail for defendant to retrieve upon his release.

Defendant filed a motion to suppress the evidence that McGuire had obtained as a result of the seizure of defendant's backpack and the subsequent search of the backpack and its contents, citing Article I, section 9, of the Oregon Constitution.[1] At the hearing on the motion, the state made a brief opening statement:

> "For the State, Your Honor, briefly, the State's position is that the only issue that can possibly be raised here is regarding inventory. The State's position [is] that [defendant's] belongings were searched pursuant to the validly promulgated, and authorized policy of [Eugene Police Department], and the Lane County Jail, and that there is no issue regarding that inventory policy.

> "I think everything else is sort of moot."

At the hearing on the motion, McGuire testified that he seized the backpack because he believed that he was liable for it because it was defendant's property, and because, if it were left in the park, defendant would be littering. Correspondingly, the prosecutor argued that McGuire had authority to seize the backpack because, before being arrested, defendant had said that the backpack was his and because McGuire did not want to leave the backpack in the

---

[1] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

park. Thus, the state's theory at the hearing was that the backpack belonged to defendant and McGuire could seize it as the property of an arrestee.

Although, at one point in the hearing, the prosecutor stated that McGuire could not leave the backpack in the park as "abandoned property," the state did not argue that defendant had abandoned the backpack. The state did not dispute that McGuire's conduct was a "seizure" under the Oregon Constitution, nor did it dispute that defendant had protected possessory and privacy interests in the backpack. Indeed, the state's position was that defendant had continuing interests in the backpack and, because those interests could be the basis for a claim against the police and city, McGuire was justified in seizing and searching the backpack. In other words, the state's position in the trial court was that McGuire could seize and search the backpack *because it was defendant's property.*

The trial court accepted the state's argument and denied defendant's motion. Defendant's case was tried to a jury, which found him guilty of the single charged count. This appeal followed.

On appeal, defendant argues, under both the state and federal constitutions, that (1) McGuire seized the backpack unlawfully, (2) even if McGuire seized the backpack lawfully, his purported inventory of its contents was unlawful because the inventory policies are facially invalid, and (3) even if the policies are not facially invalid, the purported inventory was unlawful because McGuire did not abide by the policies' terms.

In response, the state argues that (1) McGuire seized the backpack lawfully because leaving it in the park could have subjected the police and city to liability for failing to safeguard the personal belongings of an arrestee, (2) the inventory policies are not facially invalid, and (3) McGuire abided by the policies' terms when he inventoried the backpack. In addition, the state argues, for the first time on appeal, that defendant did not have any protected property or privacy interests in the backpack because, by saying that the backpack was not his, defendant "abandoned" any

protected interest he had in it, "at least temporarily, until he might again assert a protected interest."

We begin by addressing whether, under Article I, section 9, McGuire could seize the backpack. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (court disposes of all issues of state law before addressing issues of federal law). As previously mentioned, in the trial court, the state did not dispute that McGuire's retrieval of the backpack was a seizure under Article I, section 9. Because McGuire's seizure of the backpack was warrantless, the state bore the burden of proving that it was conducted pursuant to an exception to the warrant requirement. *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). The only exception that the state identified was the inventory exception.

The inventory exception does not apply to the seizure of the backpack. As the Supreme Court has held, a lawful inventory must satisfy three requirements: (1) the state must lawfully possess the property that is inventoried, (2) the inventory "must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory," and (3) the person directing or taking the inventory must not deviate from the established policy or procedures. *State v. Atkinson*, 298 Or 1, 8-10, 688 P2d 832 (1984). As the first requirement indicates, before an officer may inventory an item, the officer must already lawfully possess the item. *Id.* at 8-9 ("Whenever police officers obtain custody of private property for reasons other than by consent or seizure under a warrant or incident to a lawful arrest or exigent circumstances, the first step is to determine the source of the authority for the custody. If the government agents had no authority to take custody of the property, then there can be no lawful intrusion into it. The inquiry ends there."); *State v. Willhite*, 110 Or App 567, 571, 824 P2d 419 (1992) (to satisfy the first prong of the *Atkinson* test, the state must identify a provision of law that authorized taking custody of the subject property). Thus, an inventory policy does not give an officer the authority to seize an item; rather, the inventory policy governs the scope of the examination of the item once the officer already

lawfully possesses it. *State v. Komas*, 170 Or App 468, 478, 13 P3d 157 (2000) ("[I]nventory policies govern the *examination* of property and not its *seizure*." (Emphasis added.)). Accordingly, we conclude that, in this case, the inventory policies did not authorize McGuire to seize the backpack, and we note that the state has not identified any other provision of law that authorized the seizure.

The state argues, as it did in the trial court, that McGuire could seize the backpack because otherwise it would have been left in the park and the police and city would have been liable for its damage or loss. That argument is unavailing. An officer cannot seize and search property simply because it is in the state's interest to do so. The interest that the state cites in support of the seizure of the backpack—protection from liability—also underlies inventories, but to be constitutional, an inventory must not only serve a state interest, it must also satisfy the *Atkinson* requirements, that is, the inventory must be authorized by law and conducted pursuant to, and in compliance with, a properly authorized administrative program that is designed and administered so that the inventory involves no exercise of discretion on the part of the person conducting the inventory. Similarly, even assuming that a seizure like the seizure of the backpack in this case could be constitutional, at a minimum, it would have to be specifically authorized by law. *State v. Anderson*, 101 Or App 594, 597, 792 P2d 451 (1990) ("Seizure in an administrative context must be specifically authorized."); *see Willhite*, 110 Or App at 572 (politically accountable officials must decide how, and for what purposes, government officials may intrude upon protected possessory and privacy interests, and courts must determine the constitutionality of the policies and procedures that authorize such intrusions).

As mentioned, in addition to arguing that McGuire could seize the backpack to protect the police and city from liability, the state argues—for the first time on appeal—that the seizure was not a seizure for Article I, section 9, purposes because defendant did not have any protected interests in the backpack. Specifically, the state argues that defendant did not have any protected property or privacy interests in the backpack because he "abandoned the backpack"—that is, according to the state, he "abandon[ed]

\* \* \* any constitutional interest" that he had in the back-pack, "at least temporarily, until he might again assert a protected interest."

Because the state did not make its abandonment argument in the trial court, we may consider the argument only if certain conditions are met. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). One of those conditions is that "the evidentiary record must be sufficient to support the proffered alternative basis for affirmance." *Id.* at 659.

> "That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

*Id.* at 659-60 (emphasis in original). Because it is dispositive, we turn first to the question of whether the record might have developed differently if the state had raised its abandonment argument below.

The state's abandonment argument is not entirely clear. At points, the state appears to assert that defendant permanently abandoned the backpack itself and, at other points, the state appears to assert that defendant temporarily abandoned any protected interest in it. Those are two different theories. The first is an "abandonment of property" theory, and the second is more properly labeled a "disclaimer of interest" theory, similar to a "waiver" theory. We address the two theories in turn.

Abandonment of property is an intentional and permanent relinquishment of one's interests in the property without vesting those rights in another person. *State v. Pidcock*, 306 Or 335, 339, 759 P2d 1092 (1988) (defendant

did not abandon his briefcase, which fell out of his truck, until he stopped actively trying to locate it); *see also State v. Tanner*, 304 Or 312, 323, 745 P2d 757 (1987) (defendant retained a protected privacy interest in property that he had given to friends as collateral "[s]o long as there remained a possibility that [he] would reclaim" the property). If a person has abandoned property, the person has no protected possessory or privacy interests in it, and, therefore, a seizure or search of the property does not violate the person's Article I, section 9, rights. A person does not abandon property by stepping away from it in response to a police order or by denying ownership of it; indeed, those actions do not even constitute a disclaimer of the person's protected possessory and privacy interests in the property. *State v. Cook*, 332 Or 601, 608-09, 34 P3d 156 (2001).

In *Cook*, an officer saw the defendant in a semi-enclosed area adjacent to a parking lot. The defendant had bent down next to a dumpster and was putting clothing into a duffel bag. The officer asked the defendant to step out of the semi-enclosed area, and the defendant did, leaving the clothing and duffel bag on the ground. The defendant told the officer that he had found the clothing in a pile and that he was looking through the pile to see if there was anything he could use. He also told the officer that none of the items that he had been handling were his, except an army jacket. While the defendant waited outside, the officer entered the semi-enclosed area and searched the clothing and the bag. Inside the bag, the officer found a syringe and two spoons, one of which contained a white powder. After further questioning, the defendant admitted that the bag was his, and the officer arrested him. The state charged the defendant with possession of methamphetamine, and, before trial, the defendant moved to suppress the evidence resulting from the officer's seizure and search of the clothing and bag. The trial court denied the motion, and we affirmed, holding that the defendant had abandoned his interests in the clothing and the bag before the search. The Oregon Supreme Court allowed review and reversed.

The Supreme Court held that the officer's "seizure of the clothing and bag followed by the immediate search of those items violated [the] defendant's possessory and

accompanying privacy interests protected by Article I, section 9." *Id.* at 609. In doing so, the court expressly rejected the state's argument that the defendant "relinquished any possessory or privacy interest in the bag and its contents, by leaving the items on the ground when he agreed to talk to the officer, walking away from them and repeatedly denying that the items were his." *Id.* at 606. The court explained:

> "The fact that [the] defendant told the officers that he did not own the bag and clothes did not, however, permit the officers to conclude that defendant intended to relinquish all his constitutionally protected interests in those items. Although [the] defendant had relinquished his immediate physical possession of the bag and clothing by leaving them on the ground, undisputedly he did so only after [the officer] instructed him to 'step out' of the area near the dumpster where [the] defendant was sorting the clothes into the bag. Leaving the items on the ground in compliance with the officer's request to 'step out' is not conduct demonstrating an intent permanently to relinquish possession of the items or the privacy interests that accompanied the right to possess them."

*Id.* at 608-09. *See also State v. Creighton*, 142 Or App 378, 382, 921 P2d 1339 (1996) (the defendant's disclaimer of ownership of the backpack that he had been carrying did not constitute a forfeiture of his privacy interest in the backpack).

The record in this case suggests that defendant did not abandon the backpack before McGuire seized it. Shortly before he was arrested, defendant said that the backpack was his and tried to pick it up. He moved away from it only when he was arrested. If the state had argued in the trial court that defendant had abandoned the backpack, the evidentiary record might have developed differently. The parties would have focused on whether defendant had left the backpack on the ground for anyone to take, with no intent to exercise any control over it or make any claim to it in the future. If that had been the focus, defendant might have presented evidence regarding where the backpack was relative to the location of his companions, whether he had told his companions that they should take the backpack, and whether he had any reason to believe that they would do so on their own. Because the evidentiary record might have developed

differently if the state had argued in the trial court that defendant had abandoned the backpack, and because that record could affect the disposition of the issue, we cannot consider the state's abandonment claim on appeal. *Outdoor Media Dimensions Inc.*, 331 Or at 660; *see Cook*, 332 Or at 607 ("[T]he determination whether a defendant has relinquished a constitutionally protected interest in an article of property involves both factual and legal questions[.]").

The state's second theory is that, through his disclaimers, defendant relinquished his interests in the backpack, at least temporarily.[2] Whether a person has relinquished his or her protected interests in property involves both factual and legal questions, *Cook*, 332 Or at 607, and the resolution of the factual questions requires consideration of the content and context of the person's words and actions. If the state had asserted its disclaimer theory in the trial court, the record might have developed differently because the theory depends on the scope of the disclaimers. It is not apparent that defendant was disclaiming anything other than ownership, and a disclaimer of ownership is not a disclaimer of all protected interests. *See id.* at 607-08 (because Article I, section 9, protects both possessory and privacy interests, "concepts of ownership and possession are relevant, though not always conclusive, in the factual and legal determination whether a defendant relinquished all constitutionally protected interests in an article of property").

Here, if the state had argued in the trial court that defendant had relinquished, at least temporarily, all of his

---

[2] The state, following some of our cases, asserts that defendant "abandoned" his interests in the backpack. However, using the same term—"abandonment"—to describe both a permanent relinquishment of all rights to property and a temporary relinquishment of the right to be free from unreasonable government seizures and searches should be avoided because it can lead to imprecise analysis. If a person has not abandoned an item of property, the person has protected interests in the property and the state may intrude upon those interests only if the intrusion is justified by a warrant or an exception to the warrant requirement. For example, if a person simply sets a bag down and walks away from it, the person has not abandoned the bag itself; the person retains protected interests in the bag and an officer may not seize or search the bag unless the officer does so pursuant to a warrant or an exception to the warrant requirement. *See Cook*, 332 Or at 607-08. The person's protected interests do not need to be specifically asserted, although they can be waived if, for example, the person consents to the seizure or search of the bag.

protected interests in the backpack, the parties would have focused on the content and context of defendant's disclaimers. And, defendant might have presented evidence regarding exactly what he said to McGuire and whether he intended to convey, or could reasonably be understood to have intended to convey, that seizure of the backpack would not violate any protected interest he had in it. He might have presented evidence regarding whether, as he argues on appeal, the disclaimers were intended to keep McGuire from taking the backpack into custody, and he might have also presented evidence that McGuire understood that he was not relinquishing all of his protected interests in the backpack. *See State v. Kendall,* 173 Or 487, 492, 24 P3d 914 (2001) (the officer's seizure of the defendant's bicycle for safekeeping reflected the officer's understanding that the defendant had not relinquished his interests in the bicycle by stashing it in a fenced lot while being pursued by the officer).

In sum, McGuire's warrantless seizure of the backpack was not justified by the inventory exception to the warrant requirement because that exception governs the scope of a search or seizure once an officer already lawfully possesses an item, and McGuire's seizure of the backpack was not specifically authorized by law, as administrative seizures must be. In addition, we decline to address the state's arguments, raised for the first time on appeal, that defendant either abandoned the backpack or disclaimed his protected interests in it and its contents. If the state had made those arguments before the trial court, the parties might have developed a materially different evidentiary record.[3]

Reversed and remanded.

---

[3] Because we conclude that the warrantless seizure of the backpack violated Article I, section 9, and that, therefore, all evidence derived from the seizure was inadmissible, we need not reach defendant's Article I, section 9, arguments regarding the subsequent search of the backpack or Fourth Amendment arguments regarding the seizure and search.