AOYAGI, J.
*259 *63 Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894, challenging the trial court's denial of her motion to suppress evidence obtained during a vehicle inventory. In the course of a lawful traffic stop, a police officer decided to impound defendant's car. When the officer asked defendant to step out of the car for the inventory, she did so, leaving her purse on the passenger seat. In accordance with the police department's inventory policy, an officer inventoried defendant's purse, including the contents of a wallet in the purse. The officer found methamphetamine and needles in the wallet. Defendant was arrested and charged. Before trial, she moved to suppress the evidence found in her purse along with any derivative evidence. The trial court denied the motion, and defendant was subsequently convicted. On appeal, we conclude that the trial court did not err in denying defendant's motion to suppress and, accordingly, affirm.
I. STANDARD OF REVIEW
We review the trial court's legal conclusions for legal error. State v. Bean , 150 Or. App. 223, 225, 946 P.2d 292 (1997), rev. den. , 327 Or. 448, 966 P.2d 222 (1998). As to the facts, we are bound by the trial court's express and implicit findings so long as they are supported by the record. State v. Ehly , 317 Or. 66, 75, 854 P.2d 421 (1993). We state the facts in accordance with that standard.
II. FACTS
While on patrol one night, Officer Delepine of the Hillsboro Police Department saw defendant driving with an expired registration tag on her license plate. Delepine activated his overhead lights to initiate a traffic stop, and defendant pulled to the side of the road. Delepine approached defendant and advised her of the reason for the stop. When Delepine asked her for her driver's license and proof of insurance, defendant admitted that her registration was expired, that her driver's license was suspended, and that she did not have insurance. Delepine used his in-vehicle computer to confirm that information. He then began writing a citation.
*64 Because he intended to impound the car, he also called for a second officer to assist.
Delepine was still writing the citation when the second officer, Weed, arrived. After telling Weed that he intended to impound defendant's car, Delepine approached defendant, who was still in the car. Delepine told her in a conversational tone that he "was going to be impounding her vehicle for the reasons of her license being suspended, no insurance, and it being a hazard." (Delepine considered the car to be a hazard because it was blocking the bike lane.) Weed stood by the passenger door as Delepine spoke to defendant on the driver's side. Delepine asked defendant "to step out of the vehicle so that Officer Weed [could] conduct an inventory." He "asked her" and "didn't order her," although defendant did not have the option to stay in the car. Delepine did not say anything to defendant about taking items out of the car-he did not tell her to take items with her, nor did he tell her to leave items in the car. Delepine explained, "Generally, I just have them get out of the car. Most of the time after I tell someone that I'm towing their car, they grab * * * those things that they want."
Defendant got out of the car. She brought her cell phone and a pack of cigarettes with her. Defendant left her purse on the passenger seat, and she did not ask to remove the purse or any other property from the car. Once out of the car, defendant stood with Delepine near the hood of his vehicle. Delepine *260 requested defendant's current address for the citation. He asked defendant whether there were any valuable or dangerous items in the car, as relevant to the inventory, and she said no. Then he inquired about defendant getting a ride to leave, and she said that she would call someone.
Meanwhile, Weed had begun the inventory of defendant's car. He conducted the inventory in accordance with the Hillsboro Police Department's inventory policy. Upon taking "constructive custody of a vehicle prior to impoundment," the policy requires an officer to inventory, among other things, "all personal property and the contents of open containers found" in the vehicle's passenger compartment. The policy does not allow the opening of "closed containers," but it expressly excludes "item[s] designed for carrying *65 money and/or small valuables"-such as closed wallets, coin purses, purses, and waist packs-from the definition of "closed containers."[1] In other words, the policy provides for items like purses and wallets to be inventoried, including their contents.
In this case, the first item that Weed examined during the inventory was defendant's purse, which was on the passenger seat. "[I]t was the first thing that [he] looked in because it was right there." Inside a wallet in the purse, Weed found needles and a small bag of methamphetamine. Weed directed Delepine to arrest defendant, and Delepine did so. Defendant then admitted to Delepine that she had "dirty rigs" (which Weed understood to mean used needles) and that she was a methamphetamine user.
The state charged defendant with one count of unlawful possession of methamphetamine. Defendant moved to suppress the evidence from her purse and any derivative evidence, arguing, among other things, that the officers had unlawfully seized her purse because they "did not give [her] an opportunity to take her belongings" from her car before the inventory began. After a hearing at which Delepine, Weed, and defendant testified, the trial court denied defendant's motion. The court concluded that the stop had been lawful, that the decision to impound the car had been lawful, and that the inventory had been lawfully conducted in accordance with the department's policy. As for defendant's purse, the court found that defendant had never asked to remove it and that, although the officers could have said something as a "courtesy," they were not legally required to ask defendant whether she wanted to take items with her. After the denial of her motion to suppress, defendant was tried and convicted.
III. ANALYSIS
In her sole assignment of error on appeal, defendant challenges the denial of her motion to suppress. Defendant *66 does not dispute that the traffic stop was lawful, that the officer's decision to impound her vehicle was lawful, that the Hillsboro Police Department's inventory policy is lawful, or that the officers complied with the inventory policy.[2] Nonetheless, she argues that the search of her purse violated Article I, section 9, of the Oregon Constitution. Defendant posits two alternative legal theories. First, she argues that, under the totality of circumstances, a reasonable person in her position would have believed that she could not remove items from the car. Second, she argues that the officers had an affirmative duty to ask her if she wanted to remove items from the car before impoundment and to allow her a reasonable opportunity to do so. In response, the state rejects defendant's view of *261 Article I, section 9, and argues that the officers had no obligation to ask defendant whether she wanted to remove items from the car.
We begin our analysis with a brief overview of the law relating to police inventories of impounded vehicles. We then address each of defendant's arguments in turn, beginning with the second argument because of how it relates to the first.
A. Overview of Law on Police Inventories
" Article I, section 9, of the Oregon Constitution establishes a right of the people 'to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure.' " State v. Rodgers/Kirkeby , 347 Or. 610, 621, 227 P.3d 695 (2010) (quoting Or. Const., Art I, § 9 ). Warrantless seizures are per se unreasonable "unless they fall within one of the few specifically established and well-delineated exceptions to the warrant requirement." State v. Lambert , 263 Or. App. 683, 691-92, 328 P.3d 824, adh'd to as modified on recons. , 265 Or. App. 742, 338 P.3d 160 (2014) (internal quotation marks omitted). The same is true of warrantless *67 searches. State v. Pilgrim , 276 Or. App. 747, 750, 369 P.3d 434 (2016).
The administrative seizure exception to the warrant requirement "recognizes that police have occasions to take custody of personal property," including vehicles, "for reasons that are unrelated to any criminal investigation." Lambert , 263 Or. App. at 692, 328 P.3d 824. An administrative seizure must be "specifically authorized" by law to come within the warrant exception. State v. Anderson , 101 Or. App. 594, 597, 792 P.2d 451 (1990). However, police discretion in deciding whether to administratively seize property does not preclude application of the exception. Lambert , 263 Or. App. at 693, 328 P.3d 824. As relevant here, ORS 809.720 authorizes impoundment of a person's vehicle if an officer has probable cause to believe that the person is driving with suspended driving privileges in violation of ORS 811.175 or ORS 811.182 or is driving uninsured in violation of ORS 806.010. See State v. Balabon , 292 Or. App. 870, 879, 426 P.3d 133 (2018) (applying administrative seizure exception in context of ORS 809.720 ).
An inventory search is a concept "related, but distinct" from an administrative seizure. Lambert , 263 Or. App. at 692, 328 P.3d 824. "Inventory search" is "a term that has emerged in our case law to describe a police department practice of examining and cataloguing property that is taken into administrative custody." Id . The Oregon Supreme Court has recognized "[t]hree principal purposes [that] often are put forward to justify a governmental policy of inventorying impounded personal property." State v. Atkinson , 298 Or. 1, 7-8, 688 P.2d 832 (1984). Those purposes are to help protect the owner's property while in police custody, to reduce the risk of and to tend to prevent the assertion of false claims against police for loss of property, and, in some circumstances, to reduce physical danger to police officers and others. Id .
In Atkinson , the Supreme Court stated that responsible policy makers may rely on "protective reasons" of the foregoing nature to adopt "prescribed procedures for inventorying the contents of an impounded vehicle." Id . at 8, 688 P.2d 832. According to Atkinson , an inventory policy adopted for such reasons is "not inherently 'unreasonable' within the meaning of Article I, section 9"-even if less intrusive means *68 are available that could achieve the same purposes as an inventory-so long as three conditions are met. Id . at 7-10, 688 P.2d 832. Those conditions are that (1) the vehicle is lawfully in police custody, (2) the inventory policy is properly authorized and " 'designed and systematically administered so that the inventory involves no exercise of discretion' " by police, and (3) the officer directing or taking the inventory does " 'not deviate from the established policy or procedures.' " State v. Stinstrom , 261 Or. App. 186, 190, 322 P.3d 1076 (2014) (quoting Atkinson , 298 Or. at 8-10, 688 P.2d 832 ).
It is important to keep in mind that an inventory search is noninvestigatory in nature. Thus, an officer may not order someone to leave items in a vehicle that is being impounded in order to inventory them, nor may an officer "inventory" items that an occupant has removed from the vehicle.
*262 State v. Dimmick , 248 Or. App. 167, 170, 174-75, 273 P.3d 212 (2012) (an officer unlawfully seized a backpack where the defendant tried to take the backpack with him as he exited a car subject to impoundment but the officer told him that he had to leave it); State v. Sparks , 228 Or. App. 163, 166-67, 206 P.3d 1197 (2009) (an officer unlawfully searched a purse where the defendant took her purse with her when she exited a vehicle subject to impoundment and refused to consent to a search of the purse, but the officer searched the purse anyway on the theory that he could inventory anything that had been in the vehicle when he stopped it); see also State v. Olendorff , 267 Or. App. 476, 488, 341 P.3d 779 (2014) (where the defendant was carrying a purse when she was arrested and the officer improperly refused her request to give the purse to a friend at the scene, drugs found in the purse during a subsequent inventory should have been suppressed).
With that basic framework in mind, we turn to defendant's two arguments.
B. Defendant's "Affirmative Duty" Argument
It is undisputed that, if defendant had taken her purse with her or asked to take it with her when she got out of the car, the officers could not have ordered her to leave it in the car or searched it as part of the inventory.
*69 See Dimmick , 248 Or. App. at 174-75, 273 P.3d 212 ; Sparks , 228 Or. App. at 166-67, 206 P.3d 1197. However, defendant argues that Article I, section 9, goes further. As a matter of first impression, defendant urges us to adopt a rule that, in order to rely on the administrative seizure exception to the warrant requirement, when the owner of a vehicle is present and not under arrest (and officer-safety concerns are not at issue), "police must ask the owner whether she would like to remove any items before the car is inventoried and impounded and allow her a reasonable opportunity to do so."
Defendant's proposed rule is not without appeal. We have previously recognized that the purposes of an inventory are "served by encouraging occupants to remove small containers" from vehicles prior to impoundment. Sparks , 228 Or. App. at 167, 206 P.3d 1197 (emphasis in original). By definition, inventories of administratively seized vehicles are noninvestigatory in nature, so, absent officer safety concerns, there is no legally valid reason not to want people to know that they are free to remove items from a vehicle before it is impounded. Indeed, protection of personal property and avoidance of false claims is better achieved by people taking items out of a vehicle than leaving them behind due to uncertainty about their rights. See id . ; State v. Bernabo , 224 Or. App. 379, 386, 197 P.3d 610 (2008) (a policy that requires officers to ask people to remove valuables before impoundment "recognizes that the best possible protection against theft, misplacement, and fraudulent claims against the government is simply to remove all valuables from the car").
Requiring officers to advise occupants that they may remove personal items before a vehicle is impounded also would help alleviate concerns among some members of the public that inventories are little more than warrantless investigatory searches in disguise. See, e.g. , Atkinson , 298 Or. at 12-20, 688 P.2d 832 (Roberts, J., dissenting) (discussing concerns about inventories, including one commentator's statement that "it is at least doubtful that inventories serve any purpose other than as a means of a warrantless search for evidence" (citation omitted)). In that regard, we note that some Oregon jurisdictions and law enforcement agencies have adopted their own requirements that officers ask drivers to *70 remove valuables before a vehicle is inventoried. See State v. Williams , 227 Or. App. 453, 456, 206 P.3d 269 (2009) (City of Prineville ordinance "requires that the owner or operator of the impounded vehicle be asked to remove all valuables if possible"); Bernabo , 224 Or. App. at 384, 197 P.3d 610 (Deschutes County inventory policy provides that "[t]he owner or operator of the vehicle shall be asked to remove, if possible, all valuables from the vehicle prior to impoundment").
The question before us, however, is not whether it is a good policy for law enforcement officers to ask vehicle occupants whether they want to remove personal items from a vehicle before it is impounded. Indeed, the state essentially concedes that it is. Rather, *263 the question is whether Article I, section 9, requires officers to do so. Moreover, because of the way the issue is framed by defendant, the question is whether Article I, section 9, requires officers to do so in every case in which the vehicle owner is present and not under arrest when a vehicle is administratively seized.
Several other states have grappled with similar issues in interpreting their state constitutions. See Atkinson , 298 Or. at 19-20, 688 P.2d 832 (Roberts, J., dissenting) (citing cases). For example, the New Jersey Supreme Court has interpreted the New Jersey Constitution as requiring that a driver either consent to an inventory or be given a reasonable opportunity to make other arrangements for custody of a vehicle subject to impoundment. State v. Mangold , 82 N.J. 575, 587, 414 A.2d 1312, 1318 (1980). More recently, the Iowa Supreme Court concluded that the Iowa Constitution requires, among other things, that officers explore alternatives to impoundment and, when impoundment is necessary, ask the driver whether there is any property in the vehicle that the driver wishes to retain and, if so, allow the driver to retrieve it. State v. Ingram , 914 N.W.2d 794, 820 (Iowa 2018).
Those out-of-state decisions raise important and interesting issues about whether the typical justifications for inventory policies are actually compelling enough to render the automatic warrantless search of every administratively seized vehicle reasonable, or, more precisely, not "unreasonable" for purposes of Article I, section 9. No matter how important and interesting those issues are, however, we are *71 an intermediate appellate court, and we are not writing on a blank slate. Atkinson identifies only three conditions that must be met for an inventory search to be deemed "not inherently 'unreasonable' within the meaning of Article I, section 9." Atkinson , 298 Or. at 8, 688 P.2d 832. And those conditions were met in this case. Defendant does not dispute that her car was lawfully in police custody, that the inventory policy at issue was properly authorized and did not allow discretion, and that the officers complied with the policy. See Stinstrom , 261 Or. App. at 190, 322 P.3d 1076 (summarizing the Atkinson conditions). To hold that the inventory of defendant's car was nonetheless "unreasonable," because the officers did not ask her whether she wanted to remove any personal items before the inventory began, thus seems inconsistent with Atkinson . Again, defendant is essentially asking us to adopt a per se rule that any inventory of an administratively seized vehicle is constitutionally "unreasonable" unless the present, nonarrested owner is affirmatively asked about removing items from the vehicle.
Of course, if an inventory policy contained an unconstitutional provision-such as providing for the search of closed opaque containers-we would recognize that provision as unconstitutional, notwithstanding that the vehicle was lawfully in police custody, that the inventory policy was duly authorized, and that an officer had followed the policy. In that sense, the dissent is perhaps correct to say that Atkinson does not truly control the question before us. See 296 Or. App. at 78-79, 437 P.3d at 267-68 (Egan, J., dissenting). It does not follow, however, that we should recognize a previously unrecognized constitutional right-to be affirmatively advised of the right to remove personal items from a vehicle prior to its impoundment-without a careful and compelling articulation by defendant of how doing so is consistent with existing precedent, including Atkinson , and actually required by Article I, section 9. Articulating why such affirmative advice is constitutionally required is critical, both because that is the legal question before us and because the Oregon Supreme Court has expressly cautioned against making policy decisions in the guise of constitutional requirements in the area of inventory searches. See Atkinson , 298 Or. at 6, 688 P.2d 832.
*72 In this case, although defendant raises interesting issues, she has ultimately failed to persuade us that an inventory search of an administratively seized vehicle is inherently unreasonable-and thus a violation of Article I, section 9-if a law enforcement officer has not expressly asked the vehicle's owner, who is present and not under arrest, whether she would like to remove any *264 personal items before the vehicle is impounded.[3]
C. Defendant's "Reasonable Person" Argument
We turn then to defendant's other argument-that her purse was unlawfully seized because, under the totality of the circumstances, a reasonable person in defendant's position would believe "that she was to exit the car immediately and that she was not free to reach around the car to retrieve her personal items." In other words, defendant argues that, by getting her out of the car in the manner that they did, the officers interfered with her possessory interests in the items in the car so as to constitute an unlawful seizure of those items before the administrative seizure took place.
"Property is 'seized,' for purposes of Article I, section 9, when there is a significant interference, even a temporary one, with a person's possessory or ownership interests in the property." State v. Juarez-Godinez , 326 Or. 1, 6, 942 P.2d 772 (1997). The same precepts apply to seizure of an object as to seizure of a person. Id ."Just as a person may be seized by a show of authority, so can a piece of property." Id . at 7, 942 P.2d 772 (emphasis in original). "Just as police conduct with respect to a person is tested according to what a defendant did believe and what an objectively reasonable person would believe under the circumstances, so is police conduct with respect to property." Id . (emphases in original). "Finally, just as any determination as to whether a person has been seized necessarily involves a fact-specific inquiry, so does *73 the determination as to whether an object has been seized." Id . (emphases in original).
The moment when an officer informs a person who is not under arrest that a vehicle is going to be impounded and asks, directs, or otherwise causes the person to exit the vehicle has not been the subject of much case law. Generally speaking, we agree with defendant that, in that moment, an officer could engage in conduct that would unlawfully interfere with the person's right to remove personal belongings from the vehicle, so as to constitute a seizure of those items distinct from the administrative seizure of the vehicle. See id. ; see also State v. Cook , 332 Or. 601, 609, 34 P.3d 156 (2001) (defendant did not relinquish constitutionally protected privacy and possessory interest in personal property when he left items on the ground after police instructed him to "step out" of area near dumpster). We disagree, however, that such interference occurred here.
Whether property has been seized by a law enforcement officer is a fact-specific inquiry. See Juarez-Godinez , 326 Or. at 7, 942 P.2d 772. Here, based on the trial court's express and implied factual findings, Delepine simply asked defendant in a conversational tone to step out of the car so that Weed could inventory it, and she complied. The officers did nothing to prevent defendant from taking items with her, and, in fact, she took her cell phone and a pack of cigarettes. Moreover, Delepine indicated that he had followed his general practice and that, "[m]ost of the time," people take the items that they want with them once he says that he is towing the car.
Defendant points to her being "surrounded" by Delepine and Weed as evidence of a show of authority. That characterization, however, takes the officers' positions out of context. Delepine told defendant that Weed was there to conduct the inventory, which explained why Weed was standing there, and Weed did not say or do anything. Other than the physical location of the officers, the only "circumstances" that defendant identifies as relevant to what a reasonable person would believe about her ability to remove items from the car are that she was asked to step *265 out of the car immediately after being told that it was going to be impounded, was not informed what an inventory would entail, and was *74 not advised that she could remove items from the car. Thus, on these facts, defendant is essentially asking us to hold that, unless an officer affirmatively explains the inventory process and advises a person of the right to remove personal items from a vehicle in advance of impoundment, an objectively reasonable person would believe that she is not allowed to remove personal items, such that those items have been seized for purposes of Article I, section 9.
If we had concluded that Article I, section 9, requires law enforcement officers to give an advice-of-rights regarding inventory searches, the lack of such an advisement might be relevant in assessing what an objectively reasonably person would believe. We did not so conclude, however, so there would have to be some other basis to say that an objectively reasonable person in defendant's circumstances would have believed that she could not remove personal items from the vehicle.
With respect to seizures of persons, the Supreme Court has made clear that an officer's inherent authority is not enough to effectuate a seizure but, rather, that physical restraint or a show of authority that significantly restricts a person's freedom is necessary. See State v. Anderson , 354 Or. 440, 450, 313 P.3d 1113 (2013) (a person approached by a police officer "may be discomforted by an officer's inherent authority as such and, for reasons personal to the individual, feel inclined or obliged to cooperate with the officer's request," but, for a seizure of the person to occur, "the officer must add to those inherent pressures" by either physical restraint or a "show of authority" that significantly restricts the person's freedom to terminate the encounter). The same precepts apply to seizure of an object as to seizure of a person. Juarez-Godinez , 326 Or. at 7, 942 P.2d 772. Accordingly, we conclude that the officers' conduct in this case-asking defendant in a conversational tone to step out of the vehicle because it was being impounded-was insufficient to effectuate a seizure of the items in the car.[4]
*75 In so holding, we disagree with the dissent's assertion that we are saying that it is "per se unreasonable for an individual, who has been stopped by police and ordered out of a vehicle, to believe that they cannot remove items from their vehicle before exiting." 296 Or. App. at 75, 437 P.3d at 266 (Egan, J., dissenting). The question is one of objectively reasonable belief, not assumption, and it is a fact-specific inquiry. We are holding that the mere act of an officer asking a person who is not under arrest to step out of a car because it is being impounded, without more, is not enough to cause an objectively reasonable person to believe that they cannot remove any personal items from the car. Beyond that, it will depend on the circumstances of the particular case what additional facts would suffice to establish an unconstitutional seizure of items in a vehicle distinct from the administrative seizure of the vehicle.
IV. CONCLUSION
Accordingly, we conclude that the officers did not violate defendant's rights under Article I, section 9, of the Oregon Constitution, and that the trial court did not err in denying defendant's motion to suppress the evidence found in her purse.
Affirmed.

That policy is consistent with our case law. See State v. Mundt/Fincher , 98 Or. App. 407, 412, 780 P.2d 234, rev. den. , 308 Or. 660, 784 P.2d 1102 (1989) ("Neither a wallet nor a purse is a 'closed, opaque container.' "); see also State v. Cleland , 289 Or. App. 379, 383-89, 410 P.3d 386 (2017) (James, J., concurring), rev. den. , 362 Or. 699, 416 P.3d 1091 (2018) (discussing history of that legal principle).

Defendant asserts briefly that the inventory policy "says nothing about the seizure of portable containers within [a] vehicle." It is unclear what defendant means. The inventory policy allows for the inventory of closed containers generally (without regard to their portability) and allows for the inventory of the contents of certain containers, including purses and wallets, which are the only possible "portable containers" at issue in this case. In any event, any argument on this point is undeveloped, and we, like the state, do not understand defendant to be asserting any violation of the inventory policy.

Similarly, the dissent focuses its energies on distinguishing Atkinson and on challenging the historical justifications for inventory policies, but it does not explain-or at least does not explain to our satisfaction-how it would fit into existing case law regarding Article I, section 9, and the Oregon Constitution generally, to require law enforcement officers to give advice-of-rights to owners in advance of administrative seizure of vehicles. See 296 Or. App. at 78-79, 437 P.3d at 267-68 (Egan, J., dissenting). The exact legal foundation and parameters for such a requirement would be critical if we were to recognize a new constitutional rule.

We note that the traffic stop was ongoing when Delepine asked defendant to step out of the car, so defendant's person was still temporarily seized at that time. See Rodgers/Kirkeby , 347 Or. at 622, 227 P.3d 695. However, defendant does not rely on that fact as relevant to whether her purse was seized, and, in the circumstances here, it would not change our conclusion if she did.